**Arenetta S. WHITAKER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 91–CF–141.**

District of Columbia Court of Appeals.

Argued April 30, 1992.
Decided Aug. 14, 1992.
Supplemental Opinion on Rehearing
Dec. 4, 1992.

Stephen F. Brennwald, Takoma Park, MD, for appellant.

Jay B. Stephens, U.S. Atty., and John R. Fisher and Roy W. McLeese, III, Asst. U.S. Attys., Washington, DC, for appellee.

Before FERREN, TERRY, and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

Arenetta Whitaker was convicted by a jury of possession of a firearm during a crime of violence (PFCV),[1] in violation of D.C.Code § 22–3204(b) (Supp.1992). On appeal, she contends that the trial judge committed reversible error by failing to reinstruct the jurors when it became apparent that, in the absence of reinstruction, they were likely to return inconsistent verdicts incompatible with the judge's original charge. She claims that as a result of this erroneous failure to reinstruct, the jurors found her guilty of a compound offense although they were unable to agree as to her guilt of any "predicate offense," and that this result was avoidable and unlawful. We agree and reverse.

## I

In the early morning hours of February 21, 1990, Ms. Whitaker, who was then twenty-seven years of age, was riding in a green Renault Alliance which was being operated by her niece. Ms. Whitaker's seventeen-year-old stepdaughter was also a passenger. Three other young women, who became the complaining witnesses, were in the area on foot. The two groups spotted each other, and there was trouble.

Ms. Whitaker's niece, apparently believing that the three pedestrians were staring at her and making fun of her, demanded to know "what the fuck you are looking at." A verbal altercation ensued, and one of the occupants of the green Renault escalated the contretemps from words to deeds by firing a pistol. No one was struck or injured in the shooting.

At trial, all three of the complainants testified unequivocally on behalf of the prosecution that the shooter was Ms. Whitaker and that the weapon was fired at or towards them. Both Ms. Whitaker and her stepdaughter insisted, on the other hand, that the niece, who by all accounts had precipitated the incident with inflammatory words, had also done the shooting. Ms. Whitaker and her stepdaughter also claimed that the shot was fired into the air above the complainants' heads, evidently to scare rather than to wound them. The niece testified briefly on rebuttal, denied that she was the shooter, and professed not to know who was.[2]

Although only a single shot was fired, the indictment charged Ms. Whitaker (and originally her niece)[3] with three separate counts of assault with a dangerous weapon (ADW), with PFCV, and with the three misdemeanor possessory weapons offenses described in note 1, *supra*. Ms. Whitaker entered a plea of not guilty, and the case went to trial on December 3, 1990.

The following day, after both sides had rested and closing arguments had been presented, the judge delivered his charge to the jury. He explained the elements of

1. Ms. Whitaker was also convicted of carrying a pistol without a license, D.C.Code § 22–3204(a) (Supp.1992), unlawful possession of an unregistered firearm, D.C.Code § 6–2311(a) (1989), and unlawful possession of ammunition for that firearm, D.C.Code § 6–2361(3) (1989). She does not challenge in this court her convictions for these misdemeanor weapons offenses.

2. Ms. Whitaker's defense, as indicated above, was that it was her niece who had committed the charged offenses and that she (Ms. Whitaker) was innocently present. Aside from the identification of the niece as the shooter by the other two occupants of the car, there was testimony that police found the pistol in a coat which the niece had borrowed from the stepdaughter, that the weapon belonged to the niece's boyfriend, and that the niece was in possession of (and presumably used) crack cocaine. Indeed, the niece entered a plea of guilty to possession of a controlled substance in connection with twenty-four bags of crack found by police when they came to make the arrest. The complainants, on the other hand, expressed certitude that, although it was the niece who had verbally abused them, it was Ms. Whitaker (whom they described as having a distinctive appearance which made her easy to identify) who had shot at them.

3. We were advised at argument that the weapons charges against the niece were dismissed, apparently in connection with her plea to the drug offense.

ADW, and then turned to the offense of PFCV. He instructed the jurors that ADW is a crime of violence, and that

> [i]f you're not satisfied beyond a reasonable doubt that the defendant committed the crime of violence of assault with a dangerous weapon, as I've given you the elements, if you're not satisfied of that, then you must find the defendant not guilty of [PFCV].

On December 5, 1990, the third day of trial, the jurors sent the judge a series of four notes, two before lunch and two after lunch. They informed him on each occasion that they were unable to agree on a verdict with respect to the first three (ADW) charges, but that they had reached a verdict as to the remaining four (PFCV and the three misdemeanors). After the content of the last of these notes was disclosed, Ms. Whitaker's counsel requested the judge to reinstruct the jury:

> My point, Your Honor, is that I believe, to protect my client's rights, I have to ask for the jury to be instructed before they announce their verdict, that they cannot find her guilty of the fourth count unless they have convicted her of count one or two or three, and it would be like a murder case where the jury's told not to go on to count two, murder II, unless they found her not guilty of murder I. They can't find her guilty of the fourth count. Maybe they found her not guilty. But if they have found her guilty, I don't want that inconsistent verdict to stand on appeal just because inconsistent verdicts are allowed to stand where the jury, I believe, should know, but apparently they do not, that they can't find her guilty of that.

The judge declined counsel's request. He noted that the jurors had not expressed any confusion, that the instructions were proper, and that he knew of no justification for instructing them further. Ruling that the four notes "evinced enough strong indication of hopeless deadlock to say that on counts one through three they are not realistically going to reach unanimous verdicts," the judge stated that he would receive the verdict as to the counts on which

the jury was unanimous and declare a mistrial with respect to the remaining charges. The jury then announced that it had found Ms. Whitaker guilty of PFCV and of the three weapons misdemeanors. In accordance with the statutory five-year mandatory minimum sentence for PFCV, Ms. Whitaker, who had no prior criminal record, was sentenced to imprisonment for no less than five years and no more than fifteen. This appeal followed.

## II

▮▮▮ In general, "[d]ecisions regarding reinstruction of a jury are committed to the discretion of the trial court; absent abuse of that discretion we will not reverse." *Davis v. United States*, 510 A.2d 1051, 1052 (D.C.1986) (per curiam). Where a jury has demonstrated confusion, however, the trial judge may not allow that confusion to continue, but must make an appropriate and effective response. *Murchison v. United States*, 486 A.2d 77, 83 (D.C.1984); *Bedney v. United States*, 471 A.2d 1022, 1024 (D.C.1984) (per curiam); *United States v. Bolden*, 169 U.S.App.D.C. 60, 67, 514 F.2d 1301, 1308 (1975); *see also United States v. Laing*, 281 U.S.App.D.C. 266, 275, 889 F.2d 281, 290 (1989) *cert. denied*, 494 U.S. 1069, 110 S.Ct. 1790, 108 L.Ed.2d 792 (1990). Indeed, "[w]hen a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 90 L.Ed. 350 (1946). Ms. Whitaker contends that jury confusion was demonstrated in this case. We are persuaded by her contention.

Because of the close relationship in this case between the predicate offense (ADW) and the compound offense (PFCV), a guilty verdict as to PFCV could not be reached logically or in conformity with the evidence and the judge's instructions, unless a guilty verdict was also reached as to at least one ADW count. Similarly, the jury could not logically find Ms. Whitaker not guilty of PFCV unless she was also found not guilty of ADW. Indeed, the government does not argue to the contrary, nor has it suggested in its brief that there can be any logical

reconciliation of the verdict as to PFCV and the mistrial as to the ADW counts. If the jurors were satisfied beyond a reasonable doubt that Ms. Whitaker shot at one or more of the complainants, then they were required to convict her both of ADW and of PFCV. If they entertained a reasonable doubt as to the identity of the shooter, or as to whether she shot at anyone, they were required to acquit her both of the predicate offenses and of the compound offense. Ms. Whitaker could not have committed PFCV without also having committed ADW, for ADW is the "crime of violence" which is an element of PFCV. She likewise could not be guilty of ADW without also being guilty of PFCV, because the weapon with which she allegedly assaulted the complainants was concededly a firearm, and ADW is a crime of violence. There was no logical way, under the court's instructions or as a matter of common sense, in which a juror could be undecided as to all three ADW's but nevertheless reach a verdict as to PFCV.

It is true, as the judge noted, that the jurors did not report to the court that they were confused. That, however, can hardly be conclusive. Counsel for Ms. Whitaker put it well in his brief on appeal:

> A group of people (such as a jury) may not realize they are lost, and they may still be lost. They will then continue to be lost until they realize their situation or until someone informs them of it. This jury obviously did not realize it was confused, but it obviously still was. It was up to the court to clear away that confusion.

A jury is presumed to follow the court's instructions. *Thompson v. United States,* 546 A.2d 414, 425 (D.C.1988). Where, as here, the jury indicated in successive notes to the judge that it was ready to return a verdict which would be logically irreconcilable with his instructions and with the jury's inability to agree on the ADW counts, the existence of confusion was, at least, the most reasonable inference. As the court put it in *Lansburgh & Bro. v. Clark,* 75 U.S.App.D.C. 339, 341, 127 F.2d 331, 333 (1942),

> [t]he same jury listened to the same argument and the same evidence, at the same time in both causes and rendered two irreconcilable verdicts. They either mistakenly or arbitrarily failed to perform their duty. Both verdicts cannot be right....

Assuming, as we must, that the jurors attempted to do their duty, they must necessarily have been confused as to what the judge's instructions required.

The government argues, however, that there was no jury confusion because the notes from the jury revealed, at most, that inconsistent verdicts might be returned. Since, according to the prosecution, there is nothing wrong with inconsistent verdicts, there can likewise be nothing wrong with a communication from the jury that such verdicts may be about to emerge. This contention, if superficially plausible, does not withstand critical analysis.

■ It is, of course, true, as the government suggests, that inconsistent jury verdicts in a criminal case will not be disturbed on appeal merely because they are inconsistent. *See, e.g., United States v. Powell,* 469 U.S. 57, 62–69, 105 S.Ct. 471, 475–79, 83 L.Ed.2d 461 (1984); *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932) (Holmes, J.); *Steadman v. United States,* 358 A.2d 329, 332 (D.C.1976). Moreover, the Supreme Court has explicitly rejected the contention "that an exception to the *Dunn* rule should be made where the jury acquits a defendant of a predicate felony, but convicts on the compound felony." *Powell, supra,* 469 U.S. at 67, 105 S.Ct. at 478. Although the logic of *Dunn* and its progeny has been challenged in some jurisdictions,[4] and although a different rule applies to civil

---

4. *See, e.g., DeSacia v. State,* 469 P.2d 369, 376–78 (Alaska 1970); *People v. Dercole,* 72 A.D.2d 318, 326–33, 424 N.Y.S.2d 459, 464–69 (2d Dept.

1980); Annotation, *Inconsistency of Criminal Verdict as Between Different Counts of Indict-*

cases,[5] the *Dunn* analysis is followed in the District of Columbia. But for the judge's failure to reinstruct as requested, this court would be without authority to set aside Ms. Whitaker's conviction for PFCV.

▪ The readiness of courts to "tolerate" inconsistent jury verdicts in a criminal case, in preference to reversing a conviction after such verdicts have been rendered, *see Haynesworth v. United States,* 473 A.2d 366, 368 (D.C.1984); *United States v. Fox,* 140 U.S.App.D.C. 129, 132 n. 21, 433 F.2d 1235, 1238 n. 21 (1970), does not carry with it any proscription against taking reasonable measures to avert such inconsistency. Although jurors have the power, notwithstanding their oaths and the judge's instructions, to return verdicts contrary to their "sworn duty" to decide the case based on the law and the evidence, that power is an "anomaly in the rule of law," and its exercise should not be encouraged. *Watts v. United States,* 362 A.2d 706, 710–11 & n. 5 (D.C.1976) (en banc) (citations omitted).[6] Toleration of a necessary evil, in other words, is not to be mistaken for the exuberant or joyful contentment with which we welcome a thing of beauty.

As Justice (now Chief Justice) Rehnquist observed for the Court in *Powell, supra,* 469 U.S. at 65, 105 S.Ct. at 477, "[i]nconsistent verdicts ... present a situation where *'error,'* in the sense that the jury has not followed the court's instructions, *most certainly has occurred....*" (Emphasis added). Such error is not tolerated at all in

civil cases. *See Lansburgh & Bro., supra.* Inconsistent verdicts in multi-count criminal prosecutions present different problems, however, largely because a retrial of the entire case would encounter apparently insurmountable constitutional obstacles. "[T]he Government [unlike the defendant] has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause." *Powell, supra,* 469 U.S. at 65, 105 S.Ct. at 476–77 (citations omitted).[7] A majority of the courts, including our own, find a result which plainly favors the accused at the expense of the prosecution to be so undesirable and so one-sided that they will go so far as to sustain verdicts in which, as the Court noted in *Powell,* jury error "most certainly has occurred." *Id.* at 65, 105 S.Ct. at 477.

At the time of the trial judge's ruling on which the present appeal hinges, however, no unacceptable price would have had to be paid in order to relieve jury confusion. Ms. Whitaker was not then requesting that a conviction be set aside. On the contrary, she was attempting to avoid ever having to make such a request. She asked only that the judge repeat or clarify an instruction which he had previously given. This proposed prophylactic measure was designed to avoid the prospect of verdicts incompatible with the judge's instructions and with the jurors' oaths. If the judge had granted the defense request, the Double Jeopardy considerations which were deemed so important in *Powell* would not have been

---

ment or *Information,* 18 A.L.R.3d 259, 281–83 (1967 & Supp.1992).

**5.** *See Lansburgh & Bro. v. Clark, supra,* 75 U.S.App.D.C. at 341, 127 F.2d at 333.

**6.** In this jurisdiction, as in others, the jurors swear to render a "true verdict," in conformity with the evidence and the judge's instruction as to the law. *United States v. Wooton,* 518 F.2d 943, 946 (3d Cir.), *cert. denied,* 423 U.S. 895, 96 S.Ct. 196, 46 L.Ed.2d 128 (1975). "Once jurors are sworn, they are bound to render a verdict under the law as given by the court." *Cordero v. United States,* 456 A.2d 837, 841 (D.C.1983) (citations and internal quotation marks omit-

ted); *see also United States v. Price,* 577 F.2d 1356, 1366 (9th Cir.1978), *cert. denied,* 439 U.S. 1068, 99 S.Ct. 835, 59 L.Ed.2d 33 (1979).

**7.** The Court also noted in *Powell* that it is impossible to determine from the inconsistent verdicts whether the prosecution or the defense has benefited from the inconsistency; "it is unclear whose ox has been gored." 469 U.S. at 65, 105 S.Ct. at 477. It is said that "juries frequently convict on some counts but acquit on others, not because they are unconvinced of guilt, but simply because of compassion or compromise." *Fox, supra,* 140 U.S.App.D.C. at 132 n. 22, 433 F.2d at 1238 n. 22 (citing *Dunn, supra,* 284 U.S. at 393–94, 52 S.Ct. at 191, and other authorities).

implicated at all.[8]

The choice which confronted the trial judge in this case when defense counsel asked him to reinstruct the jury was therefore quite different from that of an appellate court which has been requested to set aside a verdict inconsistent with the jury's disposition of another count. If the judge in this case did nothing, illogical verdicts incompatible with his own prior instructions to the jury appeared likely to (and in fact did) become reality. If he had reinstructed, on the other hand, there was surely at least a substantial chance that, in conformity with the judge's clarified instructions, as well as their own oaths to decide the case according to the law and the evidence, the jurors would have avoided making contradictory findings. The circumstances differed from the post-verdict situation in that a reinstruction posed no appreciable risk of harm, but argued substantial potential benefit.[9]

■ The experienced trial judge made what he viewed as a discretionary call in this case. We agree with the government that we should not lightly overturn it. The legal foundation for the judge's decision, however, was his view that the jury's apparent readiness to return inconsistent verdicts was not an indication of confusion. For the reasons stated above, we are unable to subscribe to this view. Judicial discretion must be founded upon correct legal principles, and an exercise of discretion based on an incorrect legal standard

cannot stand. *In re J.D.C.*, 594 A.2d 70, 75 (D.C.1991).

## III

Ms. Whitaker's conviction of PFCV is reversed, and the case is remanded for a new trial.

*Affirmed in part,*[10] *reversed in part, and remanded.*

TERRY, Associate Judge, dissenting:

I disagree with my colleagues on two grounds. First and foremost, I simply cannot understand why, if inconsistent verdicts are permissible, as the majority concedes they are, it would be error for a trial judge not to instruct a jury that its verdicts on the several counts of an indictment should be consistent with one another. Jury verdicts do not have to be logical; on the contrary, this and other courts have long upheld the right of a jury to be illogical. Second, on the record in this case, even assuming that a judge has some obligation to give such an instruction when a jury tells the court that it is "confused," I cannot agree that this jury revealed any confusion in its notes to the court. Accordingly, I dissent.

My colleagues recognize, as they must, that inconsistent jury verdicts are permissible. The Supreme Court has said so on at least four occasions, beginning sixty years ago in *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932),[1] and

---

**8.** In the present case, there is another reason why the unacceptably one-sided consequence of ordering a new trial to which the Supreme Court alluded in *Powell* does not arise. Ms. Whitaker was not acquitted of the ADW counts. Rather, the jury was unable to agree on a verdict as to any of them. Under these circumstances, the Double Jeopardy Clause will not preclude Ms. Whitaker's retrial on the ADW counts. *See United States v. Scott,* 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978).

**9.** The government suggested at argument that if the judge had reinstructed the jury as requested, his intervention might have pressured the jury to convict Ms. Whitaker on one or more of the ADW counts. A direction to follow an instruction which the court had previously given could hardly be viewed as coercive, either for acquittal or for conviction. But even assuming that

concern regarding possible coercion would be an appropriate consideration if Ms. Whitaker had objected to the reinstruction, the fact is that it was counsel for Ms. Whitaker who was requesting the judge to take this necessary step to clear away apparent jury confusion. There is no question that Ms. Whitaker was represented by competent counsel, and we do not think that the judge's refusal to give an otherwise appropriate and necessary reinstruction can be justified on the basis that it was bad tactics for counsel to request it.

**10.** As noted in footnote 1, Ms. Whitaker has not asked us to reverse her convictions for the misdemeanor offenses, and they remain in effect.

**1.** *Accord, United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *Hamling v. United States,* 418 U.S. 87, 101, 94 S.Ct. 2887,

all the federal circuits[2] and this court[3] have so held. The reason for this rule is obvious: "In the interest of promoting the often necessary process of compromise among jurors in their differing assessments of evidence, courts tolerate inconsistency in jury verdicts." *Haynesworth v. United States*, 473 A.2d 366, 368 (D.C. 1984). Given this firmly established acceptance of inconsistent verdicts, I agree with the government that "the supplemental instruction requested by appellant was plainly contrary to law," and that the trial judge therefore did not abuse—and could not have abused—his discretion by refusing to give it.

Furthermore, I think the trial judge was totally correct when he concluded that the jury had "not expressed any confusion" in the notes it sent during its deliberations. The four notes, sent at 10:20 a.m., 12:10 p.m., 3:30 p.m., and 4:50 p.m., all said substantially the same thing: that the jury could not reach a verdict on any of the first three counts of the indictment, but that it had agreed with respect to the last four counts.[4] There was nothing in any of the notes suggesting any confusion or misunderstanding on the jurors' part. With all respect, I think my colleagues are seeing phantoms when they say that "the existence of confusion was, at least, the most reasonable inference," *ante* at 502, and that the jurors "must necessarily have been confused as to what the judge's instructions required," *ante* at 502.

In my view, the majority places far too much stress on a single word in the Supreme Court's opinion in *United States v. Powell, supra* note 1. The *Powell* Court referred to the return of inconsistent verdicts as "a situation where 'error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored." 469 U.S. at 65, 105 S.Ct. at 477, cited *ante* at 503. Seizing on the word "error," my colleagues proceed to find a reversible one in this case. I think they read *Powell* too broadly. The fact that the Supreme Court put the word "error" in quotation marks suggests to me that it is not necessarily speaking of *legal* error, or error that is judicially remediable, but rather "error" in the broader colloquial sense of "mistake" or "blunder." But whatever the word may mean in *Powell*, my colleagues apparently assume that every error has, or should have, a remedy. With this I surely cannot agree. If the majority were correct, there would be no such thing in the law as harmless error—but of course there is. *See also, e.g.,* 1 AM.JUR.2D *Actions* § 70 (1962) (discussing *damnum absque injuria*, "damage without wrong").

In sum, I am unwilling to hold that the trial judge erred as a matter of law, or even that he abused his discretion, in refusing to give the instruction that appellant requested. Under the long line of cases beginning with *Dunn*, appellant had no right to insist that the jury return a verdict that was not inconsistent, or even that it be

2899, 41 L.Ed.2d 590 (1974); *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943); *cf. Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) (acquittal of principal does *not* preclude conviction of aider and abettor).

2. *See United States v. Fox*, 140 U.S.App.D.C. 129, 132 n. 21, 433 F.2d 1235, 1238 n. 21 (1970) (collecting cases from all the circuits).

3. *E.g., Steadman v. United States*, 358 A.2d 329, 332 (D.C.1976) ("a jury verdict need not be logically consistent").

4. The first note read as follows:
   We the members of the jury cannot reach a verdict on the first three, but reached a verdict on the last four charges.

The second note said:
   Your Honor, we the members of the jury cannot reach a verdict on the first three charges. Last four charges a verdict has been reached.
The third note said:
   Your Honor, we the members of the jury cannot reach a verdict on the first three charges. Charges four through seven a verdict has been reached.
The fourth note said:
   Your Honor, we the members of the jury have once again and during the course of the day cannot reach a verdict on the first three charges. And a verdict on the last four charges.

told to do so. Since my colleagues take a different view, I respectfully dissent.

### Supplemental Opinion on Rehearing
### Dec. 4, 1992

Before FERREN, TERRY, and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

On August 14, 1992, this court reversed Ms. Whitaker's conviction for possession of a firearm during a crime of violence (PFCV). The government has filed a petition for rehearing or, in the alternative, rehearing en banc. Its primary contention is that the reinstruction requested by Ms. Whitaker—namely, that the jury may not convict her of PFCV, the compound offense, unless she was convicted of assault with a dangerous weapon (ADW), the predicate offense—would have been contrary to law. We grant the petition for rehearing and now issue this supplemental opinion.

The government relies in substantial part on *People v. Lewis*, 415 Mich. 443, 330 N.W.2d 16 (1982), in which the court, with one justice dissenting, stated as follows:

> The judge may and should instruct the jury that a person cannot be convicted of felony-firearm unless the jury finds that he committed or attempted to commit a felony. Because conviction of a felony or of an attempt to commit a felony is not an element of the offense, the jury may not be instructed that it must convict of an underlying felony in order to convict of felony-firearm.

*Id.* at 455, 330 N.W.2d at 21 (citations and internal quotation marks omitted).[1]

As the government acknowledges, however, the approach of the Supreme Court of Michigan is not uniformly followed. In *Mack v. State*, 300 Md. 583, 479 A.2d 1344 (1984), the court recognized, relying on an earlier decision,[2] that

> when an accused is charged in a multi-count indictment with the commission of a crime of violence and use of a handgun in the commission of such a crime, a verdict of guilty of the crime of violence is a prerequisite to a verdict of guilty of use of a handgun in the commission of such a crime.

*Id.* at 593, 479 A.2d at 1349.

This court recently reiterated that decisions of the Maryland Court of Appeals are entitled, for historical reasons, to the most respectful consideration by this court. *Roberts–Douglas v. Meares*, 615 A.2d 1114, 1134 n. 27 (D.C. Nov. 3, 1992).[3] Neverthe-

---

1. The *Lewis* decision provides less than unequivocal support for the government's position on this appeal. In *Lewis*, the defendants were convicted of possession of a firearm during the commission of a felony, but acquitted of the underlying felony. The court recognized that the jury might have compromised, and analyzed the problem as follows:

> If it compromised, there is the risk that some of the jurors who agreed to the compromise did not believe beyond a reasonable doubt that the defendant committed a felony, but nonetheless agreed to convict the defendant of felony-firearm (although commission of a felony is an element) in exchange for the agreement of other jurors to acquit the defendant of the underlying felony. If that is what occurred, then the jury was unable to reach a unanimous verdict on both charges. The remedy, where a jury is unable to agree on a unanimous verdict, is not dismissal of the charges, but the declaration of a mistrial, and the defendant can be required to stand trial again on the charges in respect to which the jurors were unable to agree.

415 Mich. at 451–52, 330 N.W.2d at 19. Noting, however, that the defendants were not seeking a new trial on all charges but an acquittal of the compound offense, the court rejected their position, correctly observing that "[a] compromise is indivisible. We cannot properly enforce only part of it." *Id.* at 453, 330 N.W.2d at 20.

2. *Ford v. State,* 274 Md. 546, 550–51, 337 A.2d 81, 84–85 (1975).

3. The government contends that we should not follow *Mack* because "the Maryland courts are far more hostile to inconsistent verdicts than is this court." The court in *Mack* reiterated, however, that "verdict inconsistency ... has been consistently rejected as *forming the basis for* voiding a conviction." 300 Md. at 594, 479 A.2d at 1349 (quoting *Ford, supra,* 274 Md. at 552, 337 A.2d at 85). The court also quoted Justice Holmes' statement for the Supreme Court in *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932) that "[c]onsistency in the verdict is not necessary." We are satisfied that the Maryland cases do not represent any polarized extreme.

The court further stated that an instruction directing consistent verdicts does not impair the jury's function because, "[e]ven after such an instruction has been given, the jury retains its

less, we need not and do not elect between *Lewis* and *Mack* as precedents, for in our view reversal is required under either doctrine.

In the context of the present case, the difference between the instruction approved in *Lewis* (that the defendant may not be convicted of the compound offense unless the jury finds that he or she has committed the predicate offense) and the instruction disapproved in that case (that he or she may not be convicted of the compound offense unless *convicted* of the predicate offense) ought not be of major consequence. The trial judge explicitly instructed the jury, in a separate portion of his charge, that

> [i]f you find that the government has proven every element of an offense or offenses with which the defendant is charged beyond a reasonable doubt, *then it's your duty to find her guilty of that offense or those offenses.*

(Emphasis added.) If the jurors carried out their sworn duty, then a finding that Ms. Whitaker committed the offense of ADW should have been inexorably followed by her conviction of that offense. Whether the judge gave the instruction approved in *Lewis* or the one disapproved in that case could thus make a difference here only if the jurors, intentionally or as a result of confusion, failed to follow the judge's separate "duty to convict if guilty" instruction.

In any event, the judge's refusal to reinstruct was not based on any imprecision or other deficiency in the language suggested by Ms. Whitaker's attorney. On the contrary, the judge grounded his decision on his perception that "I've given the jury correct instructions in the law, [and] *they have not expressed any confusion about it.*" (Emphasis added.) He added that he knew of no justification for instructing the jury further. The essence of the judge's ruling was that the jury's notes to the court had provided no basis for concluding that the jurors were confused, so that no further instruction was called for.

Under these circumstances, we agree with the following passage in Ms. Whitaker's opposition to the government's petition:

> The government reads too much into appellant's statements to the trial court on reinstruction. Appellant would not ask nor expect the judge to give an improper reinstruction. The loosely worded suggestion by counsel for appellant had not been phrased with any particular specificity, nor did it represent the *exact* wording that appellant thought the trial court should give. It was merely a way of putting the issue on the table for further discussion. However, the trial court never even considered giving any sort of instruction whatsoever, much less the rough suggestion put forth by counsel. It was presumed by appellant's counsel that, like any other instruction that is given to a jury, the court and both counsel would have discussed the appropriate wording of the instruction.
>
> Because the trial judge did not base his ruling on the exact wording put forth by appellant, but rather on the issue of jury confusion, the precise terminology used by counsel is [not decisive].[4]

(Emphasis in original.)

Assuming, without deciding, that defense counsel's proposed instruction was not phrased with sufficient precision, and that it ought not to have been given in counsel's exact words, this did not obviate the necessity for some effective reinstruction (*e.g.,* the repetition of the judge's *original* instruction) which would have relieved the jury's apparent confusion. If the language used by counsel in bringing up the subject was considered unsatisfactory, the proper remedy was to reinstruct the jury, but to do so with greater precision. "[E]ven a request for an instruction which is not entirely perfect may in some situations im-

---

power to err, either fortuitously or deliberately, and to compromise or exercise lenity." *Mack, supra,* 300 Md. at 597, 479 A.2d at 1351. To the extent that this analysis rejects the jurisprudence of other jurisdictions, *see, e.g., Commonwealth v. Stegmaier,* 247 Pa.Super. 159, 162, 371

A.2d 1376, 1377 (1977), we have no occasion in this case to join either camp.

**4.** We have substituted the words "not decisive" for the word "irrelevant" in the original.

pose upon the court the duty to give a more specific instruction on an issue, where it soundly appears that such an instruction is needful to enable the jury intelligently to determine the question." *Chicago & N.W. Ry. v. Green,* 164 F.2d 55, 61 (8th Cir.1947); *see also Sprinkle v. Davis,* 104 F.2d 487, 490 (4th Cir.1939). "Although a specially requested charge may be defective, it still may serve to call the court's attention to the need to charge on a defensive issue." *Williams v. State,* 630 S.W.2d 640, 643 (Tex.Crim.App.1982) (en banc); *see also Austin v. State,* 541 S.W.2d 162, 166 (Tex. Crim.App.1976) (requested instruction, although it misallocated the burden of proof, held sufficient to require correct charge on affirmative defense).

We have recently observed that a request for an instruction may be sufficient even if it was not made with "consummate clarity." *Moore v. United States,* 599 A.2d 1381, 1387 (D.C.1991); *see also Freed v. United States,* 49 App.D.C. 392, 396, 266 F. 1012, 1016 (1920).[5] "Though [arguably] inaccurate, [Ms. Whitaker's request to charge] was sufficient to direct the judge's attention to the correct rule of law." *Salter v. Leventhal,* 337 Mass. 679, 700, 151 N.E.2d 275, 286 (1958). It "direct[ed] the mind of the court to the legal principle, and ... require[d] that a correct instruction be given with regard thereto." *Sprinkle, supra,* 104 F.2d at 490. Accordingly, the proposed instruction "should have been corrected by the court and given." *Laird v. Moss,* 173 Cal.App.2d 48, 53, 342 P.2d 463, 467 (1959).

We have held that defense counsel was right with respect to his main point (that the jury was evidently confused and that the judge was obligated to relieve the ap-

parent confusion).[6] Under these circumstances, to deny all relief unless counsel, on the spur of the moment, has dotted all of his i's and crossed all of his t's, would be to allow the tail to wag the dog.

■ Although the government sounds the alarm about perceived slippery slopes along which, it hints, litigants will slide to jurisprudential catastrophe if the division opinion is allowed to stand, our decision is a narrow one. We hold only that, where the jury is apparently about to render a verdict as to a compound offense, but unable to agree as to guilt or innocence of a predicate offense, the defense is entitled, upon request, to a reinstruction of the kind approved in *Lewis* and included the judge's original charge in this case. We defer to another day any questions further down the dreaded slope. *See, e.g., Khiem v. United States,* 612 A.2d 160, 164 (D.C. 1992).

The petition for rehearing is granted. For the reasons stated in our original opinion and in this supplemental opinion on rehearing, Ms. Whitaker's conviction is reversed, and the case is remanded for a new trial on the ADW and PFCV counts.

*So ordered.*

TERRY, Associate Judge, dissenting:

Although I vote with my colleagues to grant rehearing, I remain convinced that there is no reversible error in this case and that the judgment of conviction should be affirmed. I would hold that because inconsistent verdicts are and have long been permissible, a defendant has no right to an instruction telling the jury not to return inconsistent verdicts. Furthermore, I find

---

5. At least in a criminal case in which a defendant's liberty is at stake and in which counsel has had to improvise a request for reinstruction in response to unanticipated developments during trial, we reject the notion that "a request to charge must be correct and perfect." *T.G. & Y. Stores Co. v. Waters,* 175 Ga.App. 884, 885, 334 S.E.2d 910, 911 (1985).

6. We note that the judge had remarked at an earlier stage of the proceedings, in response to defense counsel's comment on the inconsistency that would characterize a conviction of PFCV

while the jury could not agree on ADW, that "[j]uries can do remarkable things.... They have alchemy after all." At a subsequent hearing, the judge recognized the jury's confusion more explicitly:

> [i]t did take me personally three jury notes to realize what the jury was thinking, but finally the third time it finally hit even me. And I realized at that point that they were confused and—or if I couldn't be sure a hundred percent that they were confused, it would certainly appear that they were confused.

no basis in the record before us for any suggestion that the jury was "confused." My views are set forth more fully in my dissenting opinion, see pages 504–505, and need not be repeated here.