**UNITED STATES, Appellant,**

v.

**Reginald DOBYNS, Simon L. Dobyns, and William Spencer, Appellees.**

**Nos. 94–CO–151, 94–CO–152 and 94–CO–153.**

District of Columbia Court of Appeals.

Argued June 19, 1996.

Decided July 1, 1996.

E. Vaughn Dunnigan, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, III, and Corbin A. Weiss, Assistant United States Attorneys, were on the brief, for appellant.

Daniel J. Harn, Washington, DC, for appellee Reginald Dobyns in No. 94–CO–151.

Elaine Mittleman, Falls Church, VA, for appellee Simon L. Dobyns in No. 94–CO–152.

Mindy A. Daniels, for appellee William Spencer in No. 94–CO–153.

---

Before FERREN, TERRY, and STEADMAN, Associate Judges.

FERREN, Associate Judge.

A grand jury indicted Reginald Dobyns, Simon Dobyns, and William Spencer, appellees, on September 16, 1993, for kidnapping while armed, D.C.Code § 22–2101, –3202 (1989 Repl.), assault with intent to kidnap while armed, id. § 22–503, –2101, –3202, and possession of a firearm during a crime of violence (PFCV), id. § 22–3204(b). A jury acquitted all three of kidnapping while armed and assault with an intent to kidnap while armed, but convicted them of simple assault (as a lesser included offense) and of PFCV. Because appellees were acquitted of the two armed offenses that could serve as necessary predicates for the PFCV charge (simple assault could not), they moved for post-verdict judgments of acquittal of PFCV. The trial court granted the motions; the government appealed; and we reverse.

## I.

The government's evidence at trial established that at approximately 9:45 p.m. on August 6, 1993, Nikia Hammond left a friend's house for a ten-minute walk home. Hammond's route took her onto Stanton Road, S.E., where appellees Reginald Dobyns, Simon Dobyns, and William Spencer were parked and talking to some women. After seeing Hammond, appellees yelled over to her and asked for her name and whether she had a boyfriend. Hammond replied with a false name and continued walking.

The three men decided to follow Hammond in Spencer's car. Catching up with her on Howard Road, the men drove slowly behind her as she walked along the curb. Hammond turned around and saw that it was the same car she had seen a few minutes earlier on Stanton Road. Spencer, who was driving, pulled the car alongside Hammond. Reginald Dobyns then asked Hammond from the front passenger seat whether she had a boyfriend. When Hammond did not respond, Simon Dobyns asked Hammond from the back passenger seat whether he could be her boyfriend. Hammond continued walking up Howard Road away from the car.

Reginald Dobyns left the car and began to walk behind Hammond. As she was about to run away, Reginald Dobyns grabbed her by the waist, placed his hand over her mouth, and pulled her toward the car. As he struggled with Hammond, she began kicking and screaming. Hammond bit Reginald Dobyns' hand, and he retaliated by biting the side of her face. After a few seconds, Reginald Dobyns asked Simon Dobyns to help him push Hammond into the car. Together they forced her partially into the back seat. As she was being pushed into the car, Spencer pointed a gun at her and demanded that she get in.

Metropolitan Police Officers Jose Diaz and Linda Hazelton, who were about to begin a foot patrol in the area, heard Hammond scream for assistance. Upon seeing Reginald and Simon Dobyns forcing Hammond into the car, Officer Diaz radioed for assistance and then ran to the scene. When he arrived, Hammond was almost entirely inside the car. Diaz commanded appellees to stop, whereupon Hammond left the car and ran across the street. Officer Michael Wear, who had responded to Officer Diaz's radio call for assistance, retrieved an imitation gun and a barrette worn by Hammond from inside the car. The police also discovered Hammond's earrings next to the back door of the car.

The government's evidence at trial consisted primarily of the testimonies of Hammond, Officers Diaz and Wear, and Tracy Steele, who lived on Howard Road and had viewed the incident from his front porch. Steele corroborated Hammond's and Diaz's testimony that appellees had forced Hammond into Spencer's car against her will. The government also introduced in evidence the imitation gun, Hammond's barrette and earrings, and other physical evidence.

Simon Dobyns and William Spencer both testified that they had followed Hammond after she had thrown rocks at the car. Both men denied that Hammond had been in the car, and they claimed that the fake gun retrieved by police belonged to a friend and had not been pointed at Hammond. Reginald Dobyns did not testify.

After closing arguments, the trial court gave to the jury the instructions that counsel earlier had agreed upon. The court instructed the jury on the elements of kidnapping while armed and of assault with intent to kidnap while armed. The court also explained the elements of PFCV [1] and informed the jury that it could not convict of PFCV without first convicting of one of the armed (violent) offenses:

> The offenses of kidnapping while armed and assault with intent to kidnap while armed are crimes of violence in the District of Columbia. If you are not convinced that the Government has proven beyond a reasonable doubt all of the elements of the crimes then you must find the Defendant not guilty of the offense of possession of a firearm during the commission of a crime of violence.

The court then reinstructed the jury on the elements of both kidnapping while armed and assault with intent to kidnap while armed. The court next explained to the jurors that if they found the defendant not guilty of those offenses, they should consider all lesser-included offenses.[2] Defense counsel did not object to the court's instructions.

The jury began its deliberations on November 19, 1993, and over the course thereof sent the trial court four notes. In its second note the jury requested reinstruction on the elements of kidnapping, which the court gave.[3] Later, the jury sent a third note: "If we cannot agree on a verdict of guilty or not guilty on the greater charges can we agree on a verdict for the lesser charge?" Before the court could reply, the jury sent a fourth note: "We have reached a verdict on one of the lesser charges but seem hopelessly deadlocked on all other charges. What is our next move?"

Trial counsel for Spencer asked the court to answer the third note without proceeding to the fourth. Counsel for Reginald Dobyns agreed with that request, and also suggested that the court accept a partial verdict. The trial court thanked Dobyns' counsel for his "comment" but declined to accept a partial verdict at that stage. Eventually, all counsel (including the prosecutor) agreed that the court should answer the third note.[4] Reiterating "Redbook" Criminal Jury Instruction 4.0 given as part of the original jury instructions, the court told the jury:

> [I]f after making all reasonable efforts to reach a verdict you are not able to do so or you have found the defendant not guilty of the greater offense, then you go on to consider the first lesser-included offense and then if you find the defendant not guilty of the first and you made all reasonable efforts to reach a verdict you are not able to do so, then in that event you go on to consider the [second] and third.

*See* Criminal Jury Instructions for the District of Columbia, No. 4.0 (4th ed. 1993). The court then asked the jury if the instruction was clear. Hearing nothing, the court sent the jury back to deliberate further. Counsel for Spencer then told the court that a "yes" or "no" answer to the jury's third note would have been sufficient. No other defense counsel raised an objection.

On November 30, 1993, the jury convicted appellees of assault, a lesser-included offense of assault with intent to commit kidnapping, and of PFCV, but acquitted them of the remaining offenses. In their post-trial mo-

---

1. Although the gun used in the attack on Hammond was an imitation weapon, D.C.Code § 22–3204(b) defines the crime of PFCV as "possess[ing] a pistol, shotgun, rifle, or any other firearm or *imitation firearm* while committing a crime of violence or dangerous crime as defined by § 22–3201." (Emphasis added).

2. The trial court instructed the jury on the elements of kidnapping and attempted kidnapping as lesser-included offenses of kidnapping while armed. The court also instructed the jury on the elements of assault with intent to kidnap and simple assault as lesser-included offenses of assault with intent to kidnap while armed.

3. The jury had sent an earlier note, the content of which is not revealed in the record. The trial court's written response was issued with the consent of all counsel. No one has argued that this note is relevant to this appeal.

4. Counsel for Simon Dobyns raised the prospect of "Winterizing" the jury, which the trial court rejected as premature. *See Winters v. United States,* 317 A.2d 530, 534 (D.C.1974) (en banc) (antideadlock charge).

tions, defense counsel for each defendant moved to vacate the PFCV conviction on the ground that the jury had been confused in believing that an assault conviction could serve as a predicate crime for PFCV.

Relying on *Whitaker v. United States*, 617 A.2d 499 (D.C.1992), the trial court agreed with defense counsel and vacated the PFCV convictions. The court inferred jury confusion partly from the jury notes and partly from the fact that the jury had not learned explicitly, either from the court acting *sua sponte* or from the verdict form itself, that simple assault could not be a predicate crime for PFCV.

The government noted a timely appeal as to each of the PFCV convictions; they have been consolidated for our review.

## II.

■ No one disputes that simple assault, D.C.Code § 22–504 (1989 Repl.), is not a qualifying predicate "crime of violence" for PFCV under D.C.Code § 22–3201(f). The jury's acquittals on the charges of assault with intent to kidnap while armed and of kidnapping while armed, which do qualify as "crimes of violence" under § 22–3201(f), were therefore logically inconsistent with the convictions of PFCV. The government, however, contends the trial court erred in relying on *Whitaker* to vacate the PFCV convictions; it argues the convictions should stand pursuant to this court's settled jurisprudence permitting inconsistent verdicts. Because we resolve a question of law, we review the court's ruling *de novo*. *See Davis v. United States*, 564 A.2d 31, 35 (D.C.1989) (en banc). Applying that standard of review, we agree with the government and conclude that the trial court erred.

■ It is now well-established that inconsistent verdicts by themselves do not mandate reversal. "The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932) (quoting *Steck-*

*ler v. United States*, 7 F.2d 59, 60 (2d Cir. 1925)). The Supreme Court, moreover, has rejected the contention "that an exception to the *Dunn* rule should be made where the jury acquits a defendant of a predicate felony, but convicts on the compound felony." *United States v. Powell*, 469 U.S. 57, 67, 105 S.Ct. 471, 478, 83 L.Ed.2d 461 (1984); *id.* at 66, 105 S.Ct. at 477 ("fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable") (footnote omitted).

This court, in light of *Dunn* and *Powell*, has upheld criminal convictions based on inconsistent verdicts as long as there was evidence to support the convictions. *See Mayfield v. United States*, 659 A.2d 1249, 1255 (D.C.1995) (noting "consistent refusal to accept arguments for reversals of criminal convictions on grounds of inconsistent verdicts"); *Ransom v. United States*, 630 A.2d 170, 172 (D.C.1993) ("inconsistent jury verdicts in a criminal case will not be disturbed on appeal merely because they are inconsistent") (quoting *Whitaker v. United States*, 617 A.2d at 502); *Davis v. United States*, 613 A.2d 906, 913 (D.C.1992) ("[n]or can the fact of inconsistent verdicts defeat the government's claim of evidentiary sufficiency"); *Khaalis v. United States*, 408 A.2d 313, 342–43 (D.C. 1979) ("juries are permitted to return inconsistent verdicts. We cannot permit speculation about the jury's reasons for its verdicts") (citations omitted), *cert. denied*, 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980).

In *Whitaker*, however, this court recognized one limited exception to the inconsistent verdict rule. There, the defendants were charged with three counts of ADW, with PFCV, and with three misdemeanor possessory weapons offenses. *Id.* at 500. The trial court specifically instructed the jury that defendant's guilt on the PFCV count could be resolved only after the jury had decided the ADW counts. During its deliberations, however, the jury informed the court that it was unable to agree on the ADW charges but had reached a verdict on the PFCV and misdemeanor counts. *Id.* at 505 n. 4. Defense counsel expressly request-

ed the court to reinstruct the jury in light of the obvious confusion about the charges that appeared to be leading to conviction of PFCV without conviction of a predicate offense. The trial judge, however, refused to reinstruct.

This court reversed the PFCV conviction. We relied on two critical facts. First, we stressed that the jury's notes clearly had indicated the jury was about to return an inconsistent verdict, not because of lenity but because the jurors "must necessarily have been confused as to what the judge's instructions required." *Id.* at 502. Second, we cited the fact that defense counsel specifically had requested reinstruction, which the trial court had denied. This "request" was critical: "But for the judge's failure to reinstruct as requested, this court would be without authority to set aside [the] conviction for PFCV." *Id.* at 503. We concluded that in such "narrow" circumstances the defense is "entitled, upon request, to a reinstruction of the kind approved in *Lewis* [5] and included in the judge's original charge in this case." *Id.* at 508.

■ Here, there was little basis for attributing confusion to the jury. The trial court clearly instructed the jury at the outset of deliberations that it could not convict of PFCV without convicting of a predicate crime, either assault with intent to kidnap

while armed or kidnapping while armed. Furthermore, unlike the jury notes in *Whitaker*, the notes in the present case failed to reveal any jury confusion.[6] From the final jury note it was clear that the jury had agreed only on a lesser-included offense for one of the crimes of violence, but not on any of the remaining charges. It was still possible for the jury to reach a guilty verdict on the other charged crime of violence before deciding the PFCV count. Moreover, when the trial court answered the third jury note, it expressly asked the jury whether it was confused, and on receiving no answer the court allowed the jury to continue deliberating. Finally, defense counsel agreed with the jury instructions (and jury verdict form), and—of controlling significance—unlike counsel in *Whitaker*, defense counsel never requested a clarifying instruction. Although one counsel suggested that the court accept a partial verdict, it is clear from the record that this suggestion did not amount to a request for instruction or an objection to the actions the trial court took.[7] The trial court, therefore, erred in vacating appellees' PFCV convictions on the basis of *Whitaker*.[8]

■ Nor can we conclude that the evidence was insufficient to support the PFCV conviction. Nikia Hammond, Officer Diaz, and Tracy Steele testified that Reginald Dobyns and Simon Dobyns had seized Ham-

---

5. *People v. Lewis,* 415 Mich. 443, 330 N.W.2d 16 (1982) (concluding trial judge should instruct jury that defendant cannot be convicted of compound crime unless jury finds defendant guilty of predicate crime).

6. The third jury note asking whether the jury could consider the lesser-included offenses without first agreeing on the greater offenses followed naturally from the court's instruction that the jury only should consider the lesser-included offenses if it found defendants not guilty of the greater.

7. Counsel for Reginald Dobyns suggested that the court accept a partial verdict in an effort to "break the logjam" in the jury deliberations, a suggestion the trial court declined to follow. For the first time at oral argument on appeal, counsel asks this court to consider the suggestion as the functional equivalent of a *Whitaker* request. We decline to do so. In *Whitaker*, the requested instruction was specifically aimed at eliminating jury confusion by reminding the jury to refrain from deciding the compound PFCV charge until it had reached decisions on the predicate

charges. *See Whitaker,* 617 A.2d at 501. Here, even if the trial court had granted defense counsel's request for a partial verdict, this would not necessarily have revealed, let alone eliminated, any jury confusion. For example, according to the fourth jury note, the jury may have made a decision on one of the predicate offenses for PFCV but may have been undecided on the other predicate offense. Assuming that, with a partial verdict, the jury would have acquitted defendants of one predicate offense, there remained a second predicate offense yet to be decided on which the jury could have based a PFCV conviction.

8. The trial court also noted that it had failed to inform the jury *sua sponte* that simple assault was not a crime of violence, and the court further noted that the verdict form did not reveal this fact to the jury. In *Ransom v. United States,* 630 A.2d 170, 173 (D.C.1993), we rejected both arguments as grounds for vacating a conviction arising from inconsistent verdicts where there was no evidence of jury confusion.

mond against her will on the sidewalk and had attempted to place her in William Spencer's car for unknown purposes. The evidence further established that Spencer had used an imitation weapon to get Hammond in the car. The gun, Hammond's barrette, earrings, and evidence of the bite she received from Reginald Dobyns also were admitted in evidence. From all this evidence, the jury easily could have concluded that the defendants were guilty of one or both of the predicate crimes of violence for the PFCV conviction. *See Battle v. United States*, 515 A.2d 1120 (D.C.1986) (assault with intent to kidnap while armed); *Head v. United States*, 451 A.2d 615 (D.C.1982) (armed kidnapping), *cert. denied*, —— U.S. ——, 115 S.Ct. 156, 130 L.Ed.2d 95 (1994). The PFCV convictions must be reinstated, and thus the judgment on appeal is reversed for the trial court to act accordingly.

*So ordered.*