Diane SMITH, Appellant,

v.

UNITED STATES, Appellee.

No. 94–CF–1039.

District of Columbia Court of Appeals.

Argued Sept. 19, 1996.

Decided Oct. 10, 1996.

Linda Sroufe, Oxon Hill, MD, appointed by this court, for appellant.

James G. Flood, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher and Thomas J. Tourish, Jr., Assistant United States Attorneys, were on the brief, for appellee.

Before FERREN, SCHWELB, and FARRELL, Associate Judges.

FERREN, Associate Judge.

A grand jury indicted Diane Smith, appellant, for assault with a dangerous weapon (ADW), D.C.Code § 22–502 (1996 Repl.), possession of a firearm during a crime of violence (PFCV), *id.* § 22–3204(b), and violating the Bail Reform Act (BRA), *id.* § 23–1327. The charges arose in connection with the shooting of Darlene Williams by Joseph Smith, Diane Smith's son, on August 31, 1992, and with Diane Smith's failure to appear for a scheduled trial on January 25, 1994. A jury acquitted Diane Smith of ADW, the predicate offense for the PFCV count, but convicted her nonetheless of PFCV. The jury also convicted Smith of violating the BRA. Smith contends on appeal that the trial court erred in: (1) failing to reinstruct the jury that an ADW conviction was required for a PFCV conviction; and (2) denying Smith's post-verdict motion for judgment of acquittal on the PFCV count based on her acquittal of ADW. We affirm.

### I.

On August 31, 1992, Diane Smith, her fourteen-year-old son Joseph Smith, and approximately ten girls from Ridge Road, S.E., walked to 37th Place, S.E., between 11:30 and midnight armed with crowbars, knives, and baseball bats. The group intended to force Arnice Crawford, a local fourteen-year-old girl, to fight with Jocelyn Hart, a member of the arriving group. Crawford, who was sitting unarmed at 37th Place, saw the group coming and decided to run. Darlene Williams, who was watching from her front porch at 286 37th Place, S.E., intervened and declared that she would referee the fight. Crawford and Hart then briefly fought.

Afterwards, the Ridge Road group as well as the 37th Place residents began to disperse. Diane Smith walked up to her fourteen-year-old son, who was leaning against a fence about twenty feet from the scene of the fight, and told him to "shoot that gun." Joseph Smith pulled a gun out of his sweatshirt and fired approximately five shots into the crowd. Darlene Williams, who had run at the sound of gunfire, was shot in the back. Joseph and Diane Smith then fled the scene.

A grand jury charged Diane Smith with ADW, PFCV, and violating the BRA. At trial, the government's theories of prosecution for the ADW and PFCV offenses, respectively, were that Diane Smith had aided and abetted Joseph Smith's assault on Darlene Williams [1] and constructively possessed the weapon Joseph Smith used in the assault.[2] The government relied upon the testimony of Darlene Williams, Robin Williams, and Gloria Williams, all of whom were present at the shooting. Robin Williams, Darlene Williams' daughter, testified that she was standing four feet from Joseph Smith when Diane Smith told her son to shoot the gun. Gloria Williams, Darlene Williams' sister, also testified that she heard Diane Smith tell her son to shoot.[3]

---

1. D.C.Code § 22–105 (1996 Repl.) provides:
   In prosecutions for any criminal offense all persons advising, inciting, or conniving at the offense, or aiding or abetting the principal offender, shall be charged as principals and not as accessories, the intent of this section being that as to all accessories before the fact the law heretofore applicable in cases of misdemeanor only shall apply to all crimes, whatever the punishment may be.

2. Constructive possession of a weapon requires proof that a defendant: (1) knew of a weapon's location; (2) had the ability to exercise dominion and control over it; and (3) intended to exercise such dominion and control. *See, e.g., Taylor v. United States,* 662 A.2d 1368, 1372 (D.C.1995); *Earle v. United States,* 612 A.2d 1258, 1265 (D.C. 1992).

3. The defense offered the testimony of Carl Racine, an attorney who had interviewed Robin and Gloria Williams at the time of Joseph Smith's juvenile proceeding, in an attempt to impeach their credibility with inconsistent statements. Sirala Ray, a Ridge Road girl at the fight, testified that she had not heard Diane Smith instruct her son to shoot, although she admitted that she had not been near Joseph or Diane Smith at the time of the shooting.

After closing arguments, the trial court gave the jury the instructions that counsel had earlier agreed upon. The court first instructed on the elements of assault with a dangerous weapon. The court then explained that the government was relying upon an aiding and abetting theory for that offense and gave the jury an aiding and abetting instruction. The court next explained the elements of PFCV and informed the jury that proof of the ADW offense was a prerequisite for a PFCV conviction:

> And now with regard to possession of a firearm during a crime of violence, the Government must first prove to you beyond a reasonable doubt on this charge, the second charge, that the defendant committed a crime of violence. And the crime of violence at issue here is assault with a deadly weapon. So the first thing the Government has to prove to you on the second charge is the first charge. That is the first thing the Government has to prove to you on the second charge.

The court also instructed the jury that the government intended to prove the possession element of PFCV by showing that Diane Smith had constructively possessed Joseph Smith's gun. The court then explained the three elements of constructive possession. See *supra* note 2. Finally, the court instructed the jury on the elements of the BRA offense.

The jury began deliberating on May 10, 1994, and during the course of deliberations sent the court six notes. On May 11, the jury sent its first note presenting the court with five questions which were answered without objection from either counsel. None pertained to the elements of ADW or PFCV. Later, the jury sent a second note asking the court to redefine ADW and aiding and abetting. The trial court, again without objection, gave to the jury the previously delivered instructions on those offenses. Late in the afternoon, the jury sent its third note: "We have reach[ed] a decision on one count, but are unable to reach a decision on the other two charges."

After receipt of the note, the trial court and counsel discussed the appropriate response. The court expressed a desire to accept the partial verdict and to allow the jury to continue deliberating on the two remaining counts. Trial counsel for Smith did not object but pointed out that an acquittal of ADW would "necessarily eliminate further deliberations" on PFCV. The trial court noted defense counsel's "good observation" but said it was still unclear "what you all want to do." More specifically, the judge was unsure if and when counsel wanted the court to accept a partial verdict, and how long the jury should continue deliberating on the other two counts before an anti-deadlock charge would be appropriate. The government suggested taking a partial verdict, continuing deliberations "until the end of the day," and resuming deliberations the next day without an anti-deadlock instruction under *Winters v. United States,* 317 A.2d 530 (D.C.1974). Defense counsel replied:

> [DEFENSE COUNSEL]: Okay. I would prefer that they announce their verdict tomorrow. The reason is the concern that I raised whether or not another instruction might be appropriate at the same time that they announce on what counts they're ready, unless the Court was thinking about asking them that this evening on what count they're ready to render a verdict.

The trial court then agreed that, if the jury had acquitted Smith of ADW, the jury should be informed that it was unnecessary to consider the PFCV offense:

> THE COURT: Well, if what you're saying is the reality—if what you're suggesting or wondering about is the reality, and that is that they found not guilty on assault with a dangerous weapon, I can merely take the possession of a firearm during a crime of violence out of this case. It's, it's—as far as I'm concerned, it's no longer in this case and I would just take it out.
>
> [DEFENSE COUNSEL]: Okay.
>
> THE COURT: And then all they would have left because as a matter of law I could conclude that there is no way they could make a finding on that one of guilty.
>
> [DEFENSE COUNSEL]: Okay.

The court then accepted the jury's partial verdict. Instead of deciding the ADW charge, the jury returned a guilty verdict on

the BRA offense. After the verdict, the trial court indicated that it would "Winterize" the jury and allow it to continue deliberating on the remaining two offenses of ADW and PFCV. Defense counsel did not object.

On the morning of May 12, the jury sent a fourth note: "We have reached a decision on one count. We have not reached a decision on the other count." Before the court and trial counsel could meet to discuss the note, the jury sent a fifth note informing the court: "We are making progress and would like to break for lunch." The court and trial counsel then discussed the two notes. The court decided to allow the jury to continue deliberating. All counsel agreed with the court's decision. Shortly thereafter, the jury sent out its sixth and final note to the court announcing that it had reached a verdict on both counts. Without objection, the court accepted the verdicts. The jury found Smith guilty of PFCV but not guilty of ADW. After the verdict, defense counsel orally moved for a judgment of acquittal on the PFCV conviction, contending that it could not stand because an essential element—guilt of the predicate offense of ADW—was unsatisfied. The trial court deferred ruling on the motion.

After a hearing on July 6, 1994, the trial court denied defense counsel's motion for judgment of acquittal. The court found that the jury expressly had been instructed that proof of the ADW offense was necessary for a PFCV conviction, that there was no evidence the jury had been confused at any point in its deliberations, and that there was sufficient evidence to support Smith's PFCV conviction. The trial court sentenced Smith to prison for five to fifteen years for PFCV. The court also sentenced Smith to a consecutive sentence of one to three years for violating the BRA but suspended execution of this sentence, giving Smith two years probation. Smith filed a timely notice of appeal on August 4, 1994.

## II.

### A.

Smith contends the trial court erred in refusing counsel's request to reinstruct the jury that conviction of ADW was necessary for conviction of PFCV in order to avoid inconsistent verdicts. She relies on this court's decision in *Whitaker v. United States,* 617 A.2d 499 (D.C.1992).

■ In general, " '[d]ecisions regarding reinstruction of a jury are committed to the discretion of the trial court; absent abuse of that discretion we will not reverse.' " *Whitaker,* 617 A.2d at 501 (quoting *Davis v. United States,* 510 A.2d 1051, 1052 (D.C.1986) (per curiam)) (alteration in original). In *Whitaker,* however, this court found such an abuse. The *Whitaker* defendants were charged with three counts of ADW, with PFCV, and with three misdemeanor possessory weapons offenses. *See id.* at 500. Although the trial court instructed the jury that it could not determine guilt for PFCV before deciding the predicate ADW counts, the jury sent a note during its deliberations indicating that it could not agree on the ADW counts but had decided the PFCV and misdemeanor counts. *See id.* at 505 n. 4. Defense counsel asked the court to reinstruct the jury because it was clear the jury was confused about its instructions and appeared to be heading for a conviction of PFCV without a conviction on a predicate offense. The trial court denied the request.

In *Whitaker,* this court, relying on two "critical facts," reversed the resulting PFCV convictions. *See United States v. Dobyns,* 679 A.2d 487, 491 (D.C.1996). First, we pointed out that the jury notes clearly had indicated the jury was about to render an inconsistent verdict because the jurors "must necessarily have been confused as to what the judge's instructions required," and not acting because of lenity. *Whitaker,* 617 A.2d at 502. Second, we noted that defense counsel had specifically requested reinstruction to eliminate the confusion, a request the trial court had denied. *See id.* at 503. We concluded that in such narrow circumstances the defense is "entitled, upon request, to a reinstruction of the kind approved in *Lewis* [4]

---

4. *People v. Lewis,* 415 Mich. 443, 330 N.W.2d 16 (1982) (concluding that trial judge should in-

struct jury that defendant cannot be convicted of

and included in the judge's original charge in this case." *Id.* at 508.

■ In contrast with *Whitaker*, in this case there was neither a request for reinstruction by defense counsel nor evidence of jury confusion. Smith contends that defense counsel had requested reinstruction after the jury delivered its third note indicating it had reached a verdict on one of the three counts against Smith. A review of the record makes clear, however, that after delivery of the note, defense counsel merely informed the court that reinstruction would be "appropriate" if, in fact, the jury acquitted Smith of ADW. Defense counsel's purported request for reinstruction was no more than a suggestion contingent on the jury's actually acquitting Smith of ADW when it returned its partial verdict. Once the contingency failed to materialize because the jury returned a guilty verdict on the BRA charge, defense counsel's proposal became moot. Defense counsel evidently regarded it as such since she did not request reinstruction at that time.

Nor did defense counsel object to the court's original jury instructions or request reinstruction at any other time, despite having ample opportunity to do so. More specifically, defense counsel easily could have requested reinstruction after receipt of the fourth and fifth jury notes, or before delivery of the final verdict, if she actually had perceived jury confusion.

Smith alternatively argues for the first time on appeal that the court's "promise" to eliminate the PFCV count, when discussing the appropriate response to the third jury note, relieved her of any obligation to request reinstruction then or later. Smith's contention has no merit because she ignores the fact that the court's apparent willingness to tell the jury to ignore the PFCV count was contingent upon the jury's acquitting Smith of ADW with its partial verdict. There was no discussion about what should be done

later, in the event the jury did not announce an ADW verdict. Insofar as Smith says she relied on an implied assurance that the court would vacate a PFCV conviction if returned simultaneously with an ADW acquittal, that reliance was not justified on this record and would not have been justified in any event given the law permitting inconsistent verdicts discussed below in Part II.B.

Even if defense counsel had asked the court to reinstruct the jury, Smith would not necessarily qualify for relief in the absence of apparent jury confusion, the second "critical fact" informing our decision in *Whitaker*. *See Dobyns,* 679 A.2d at 491. The court's pre-deliberation instructions unambiguously informed the jurors that they could decide the PFCV count only after deciding the ADW count. Unlike the jury notes in *Whitaker*, there was no indication from any of the six jury notes here that the jury was about to reach a verdict on PFCV without first deciding ADW. Even after the jury delivered the fourth note saying it had decided one of the remaining counts but still was considering the other, it remained possible that the jury had reached a guilty verdict on ADW, the charged crime of violence, before deciding the PFCV count; there was no necessary implication, as there was in *Whitaker*, that the jury had reached a verdict of not guilty of ADW and was about to convict of PFCV. The fourth note also did not indicate that the jury was deadlocked on the other count. Finally, the jury sent its fifth note before the court could even convene to discuss the fourth note, and it stated that the jury was making progress and wanted to break for lunch. This sequence of events further refutes appellant's contention that the jury's confusion was utterly "obvious." [5]

Smith's reliance on *Whitaker*, therefore, is misplaced. Indeed, because Smith failed to raise any objection at trial concerning the errors she alleges on appeal, we review the trial court's failure to reinstruct after the

---

compound crime unless jury finds that defendant committed predicate offense).

**5.** We need not, and thus do not, decide whether the trial judge would have committed reversible error by failing to reinstruct if defense counsel had asked the judge to do so. The question is

not frivolous, for even though the jury's decision on one of two counts did not necessarily indicate confusion, there was a possibility—as turned out to be the case here—that the jury was not following the trial court's instructions.

third jury note, or at any other time,[6] under the demanding "plain error" standard of review, not merely for abuse of discretion. *See Harris v. United States,* 602 A.2d 154, 159 (D.C.1992); *Watts v. United States,* 362 A.2d 706, 708 (D.C.1976) (en banc). Because there was no indication of jury confusion, the trial court did not err, and certainly did not plainly err, in failing to reinstruct the jury sua sponte. *See Ransom v. United States,* 630 A.2d 170, 173 (D.C.1993) (concluding trial court not required to reinstruct where no indication of jury confusion).

## B.

Smith also contends the trial court erred in denying her motion for judgment of acquittal on the PFCV conviction. She argues that ADW is a lesser-included offense of PFCV and that her acquittal of ADW accordingly bars her conviction of PFCV. It is undisputed that a BRA violation, D.C.Code § 23–1327, is not a qualifying predicate "crime of violence" for PFCV under D.C.Code § 22–3201(f), and that Smith's acquittal of ADW, which is a "crime of violence" under § 22–3201(f), is logically inconsistent with her PFCV conviction.

Nonetheless, "[i]t is now well-established that inconsistent verdicts by themselves do not mandate reversal." *Dobyns,* 679 A.2d at 490; *see United States v. Powell,* 469 U.S. 57, 67, 105 S.Ct. 471, 477–78, 83 L.Ed.2d 461 (1984); *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932). " 'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.' " *Dunn,* 284 U.S. at 393, 52 S.Ct. at 190 (quoting *Steckler v. United States,* 7 F.2d 59, 60 (2d Cir.1925)). The Supreme Court, moreover, has refused

to make an exception to the inconsistent verdict rule when the jury acquits on a predicate felony but convicts on the compound felony. *See Powell,* 469 U.S. at 67, 105 S.Ct. at 477–78; *see also Harris v. Rivera,* 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) (per curiam) (no federal constitutional bar to accepting inconsistent verdicts).

In this jurisdiction, *Whitaker* remains the one recognized exception to the inconsistent verdict rule. As we already have concluded, however, *Whitaker* is readily distinguishable from the present case, which falls squarely within our settled jurisprudence upholding criminal convictions based on inconsistent verdicts as long as there was evidence to support the convictions. *See Dobyns,* 679 A.2d at 490–91; *Mayfield v. United States,* 659 A.2d 1249, 1255 (D.C.1995); *Ransom,* 630 A.2d at 172; *Davis v. United States,* 613 A.2d 906, 913 (D.C.1992); *Khaalis v. United States,* 408 A.2d 313, 342–343 (D.C.1979), *cert. denied,* 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980).

Nor can we conclude that the evidence was insufficient to support the PFCV conviction.[7] It was undisputed that Darlene Williams was shot in the back on August 31, 1992. Darlene Williams, Robin Williams, and Gloria Williams positively identified Diane Smith's fourteen-year-old son, Joseph Smith, as the gunman. Robin Williams and Gloria Williams testified, without contradiction, that Diane Smith had told Joseph Smith to shoot the gun. From this evidence, the jury reasonably could have found that Diane Smith had knowingly participated in Joseph Smith's assault on Darlene Williams. *See, e.g., Murchison v. United States,* 486 A.2d 77, 81 (D.C.1984) (aiding and abetting assault with dangerous weapon); *Johnson v. United States,* 386 A.2d 710, 713 (D.C.1978) (same). On this same evidence, the jury also reasonably could have found that Diane Smith had constructively possessed the gun used by

---

6. Smith alleges that the trial court erred in failing to reinstruct the jury sua sponte after the fourth jury note and immediately before the final verdict was rendered.

7. Smith mistakenly assumes that an acquittal on a predicate offense necessarily indicates that there is insufficient evidence for the compound felony. This proposition, however, is entirely at odds with the logic underlying the inconsistent verdict rule. As we said in *Ransom:* "a not guilty verdict to one count of an indictment that is inconsistent with a guilty verdict on another count cannot invalidate the guilty verdict so long as the guilty verdict is based on sufficient evidence." 630 A.2d at 172.

Joseph Smith because she had known its location, had been able to exercise control over it, and had intended to exercise such control. *See Taylor v. United States, supra* note 2, 662 A.2d at 1372 (elements of constructive possession). Accordingly, the trial court did not err in denying Smith's motion for judgment of acquittal.

*Affirmed.*

SCHWELB, Associate Judge, concurring:

I think it somewhat harsh to apply a "plain error" standard of review after the trial judge has assured defense counsel, in the dialogue summarized at pages 309–310 of the majority opinion, that acquittal of the predicate offense of ADW would take the compound offense of PFCV out of the case. The judge's assurance more or less eliminated any motive for counsel to request a reinstruction and arguably lulled her into withholding such a request. Moreover, the legal predicate for the judge's stated approach, while questionable, was not so obviously wrong that counsel's reliance on the judge's words could fairly be viewed as unreasonable. *See Whitaker v. United States,* 617 A.2d 499, 506 (D.C.1992); *Mack v. State,* 300 Md. 583, 479 A.2d 1344, 1349 (1984).

I agree that the conviction should be affirmed, however, for even if counsel had asked for a reinstruction, the evidence of jury confusion was insufficient to require the judge to comply with her request.