**PEOPLE OF THE VIRGIN ISLANDS, Appellant/Plaintiff**

**v.**

**ELROY A. FAULKNER, Appellee/Defendant**

S. Ct. Criminal No. 2011-0101

Supreme Court of the Virgin Islands

August 6, 2012

TIFFANY V. MONROSE, ESQ., Department of Justice, St. Thomas, USVI, *Attorney for Appellant.*

CHRISTOPHER A. KROBLIN, ESQ., Kellerhals Ferguson LLP, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(August 6, 2012)

HODGE, *Chief Justice.* The People of the Virgin Islands appeal the Superior Court's order setting aside the jury's guilty verdict and dismissing the charge against Elroy A. Faulkner for unauthorized use of a firearm during the commission of a crime of violence. Because an inconsistent verdict is not a sufficient reason for setting aside a verdict, we reverse.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

On the evening of January 12, 2011, shots were reported to have been fired at a public housing community in St. Thomas. While investigating, members of the Virgin Islands Police Department (VIPD) observed a silver SUV matching the description of a vehicle alleged to have been connected with the shooting traveling in the vicinity of where the shots were reported fired. When the police attempted to stop the vehicle, the driver sped off into a residential area. After attempting to evade the pursuing police, the vehicle pulled into the parking lot of a nearby housing complex, and its occupants exited the vehicle and fled the scene. Police found a cell phone on the ground near the driver's door of the abandoned vehicle, and inside the vehicle police discovered a firearm magazine on the rear passenger seat. Back at the housing community where the shooting had been reported, police discovered that one of the buildings, as well as several cars in the area, had recently been struck by gun shots. The police also recovered approximately ten spent .223 caliber shell casings that matched the type of bullets found in the firearm magazine that was discovered in the back seat of the silver SUV.

The owner of the silver SUV was determined by police to be Avondale George, who resided in the same housing community where the car was

abandoned. The police were also informed by persons in the housing community that Avondale George's son Dale George (George) regularly operated the vehicle. Shortly thereafter, George was located by police in an upstairs neighbor's apartment and taken into custody. The next day, January 13, 2011, George was interviewed by members of the VIPD. According to George's trial testimony, he had gone to the housing community earlier in the day on January 12, 2011, to drop off his girlfriend. While he was there, a masked man approached his vehicle, pointed a gun at him, and asked him the whereabouts of his brother. George responded that he did not know where his brother was presently. The masked man struck George in the temple with the butt of his gun and told him to leave and never come back. After George left the housing community he contacted Shakieme S. Freeman and Vincent N. Thompson, Jr., and informed them what had transpired. George then picked up Freeman and Thompson, as well as a third individual named "Ello" who was later identified by George as Elroy Faulkner. (Trial Tr. 208-09, 268-69.) At the time George picked these individuals up, Freeman was carrying a black handgun, Faulkner was carrying some type of automatic firearm, and Thompson got into George's vehicle with "a black shirt covering something big." (Trial Tr. 193-95.) George then drove to an area close to the housing community where he had been assaulted earlier that day. There, Freeman, Thompson, and Faulkner exited the vehicle and headed towards the housing community, while George drove a short distance away and waited.

A short time later George heard a series of gun shots coming from the direction of the housing community, which caused him to drive back to the area where Freeman, Thompson, and Faulkner had exited his vehicle. Thompson called George, however, and directed him to another location. When George arrived at that location Faulkner jumped in his vehicle and told him to call Thompson. George complied, and when Thompson answered Faulkner took the phone and told Thompson to "throw the weapons over the fence and jump over because the cops are already here." (Trial Tr. 200.) Faulkner then left George's vehicle and ran behind a nearby building. A few moments later Faulkner, Freeman, and Thompson ran up to George's vehicle without any weapons and the group drove

330

away. While George was driving away, police officers responding to the shooting attempted to stop George's vehicle, which, as discussed above, caused George, Faulkner, Freeman, and Thompson to abandon the vehicle in a nearby housing community and flee the scene on foot.

Based on this evidence, Freeman, Faulkner, and Thompson were arrested. Faulkner was subsequently charged with conspiracy to commit first degree murder, reckless endangerment in the first degree, carrying or using a dangerous weapon, discharging a firearm, and unauthorized use of a firearm during the commission of a crime of violence.[1] A jury trial commenced on July 11, 2011, and at the close of all evidence the trial court dismissed the conspiracy to commit first degree murder charge against Faulkner. The remaining charges were submitted to the jury, and the jury found Faulkner guilty of reckless endangerment in the first degree pursuant to 14 V.I.C. § 625(a), carrying or using a dangerous weapon pursuant to 14 V.I.C. § 2251(a)(2), and unauthorized use of a firearm during the commission of a crime of violence pursuant to 14 V.I.C. § 2253(a). The jury, however, found Faulkner not guilty of discharging a firearm pursuant to 23 V.I.C. § 479(a). Faulkner filed a post-trial motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing, among other things, that since the jury found him guilty of unauthorized use of a firearm during the commission of a crime of violence, but not guilty of the predicate crime of violence — discharging a firearm — the trial court should dismiss his conviction for unauthorized use of a firearm during the commission of a crime of violence.

In a Memorandum Opinion and Order entered on October 17, 2011, the trial court granted Faulkner's post-trial motion for judgment of acquittal with respect to the unauthorized use of a firearm during the commission of a crime of violence charge. The trial court concluded that since both charges required proof that Faulkner discharged a firearm, the jury's "finding of not guilty as to [the] predicate offense logically excludes the finding of guilt as to the compound offense." (J.A. 128-29.) The trial court thus set aside the jury's guilty verdict and entered a judgment of

---

[1] Freeman and Thompson were also charged with conspiracy to commit first degree murder, reckless endangerment in the first degree, carrying or using a dangerous weapon, discharging a firearm, and unauthorized use of a firearm during the commission of a crime of violence respectively. However, neither of them is a party to this appeal.

acquittal.[2] The People filed its timely notice of appeal on November 14, 2011.[3]

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

██ Prior to deciding the merits of the People's appeal, we must first determine if we have jurisdiction over this matter. In a Memorandum Opinion and Order entered on October 17, 2011, the Superior Court dismissed the unauthorized use of a firearm during the commission of a crime of violence charge against Faulkner. Accordingly, the People cannot appeal this criminal judgment "unless statutory authority expressly and clearly permits such an appeal." *People v. George*, 49 V.I. 504, 507 (V.I. 2008). "In the Virgin Islands, title 4, section 33(d) of the Virgin Islands Code provides the People with the statutory authority to appeal certain criminal judgments." *People v. Pratt*, 50 V.I. 318, 321 (V.I. 2008). Under 4 V.I.C. § 33(d)(1):

> In a criminal case an appeal by the Government of the Virgin Islands shall lie to the Supreme Court from a decision, judgment, or order of the Superior Court dismissing an indictment or information or otherwise terminating a prosecution in favor of the defendant, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution or the Revised Organic Act prohibits further prosecution.

Here, the Superior Court entered its judgment of acquittal after a verdict of guilty had been entered by the trier of fact. The People may therefore appeal from that ruling without subjecting the defendant to double jeopardy. *See People v. Clarke*, 55 V.I. 473, 477 (V.I. 2011) (citing *Smith v. Massachusetts*, 543 U.S. 462, 467, 125 S. Ct. 1129, 160 L. Ed. 2d 914 (2005) ("When a jury returns a verdict of guilty and a trial judge (or an appellate court) sets aside that verdict and enters a judgment of acquittal, the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of

---

[2] The trial court, however, denied Faulkner's motion for judgment of acquittal with respect to his convictions for reckless endangerment in the first degree and carrying or using a dangerous weapon.

[3] *See* V.I.S.Ct.R. 5(b)(2).

guilty.")). Accordingly, this Court possesses jurisdiction over the People's appeal pursuant to 4 V.I.C. § 33(d)(1).

Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). In reviewing a post-verdict motion for judgment of acquittal, a trial court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *People v. Clarke*, 55 V.I. 473, 477 (V.I. 2011) (citing *Brown v. People*, 54 V.I. 496, 504 (V.I. 2010)). The trial court is required to "draw all reasonable inferences in favor of the jury's verdict." *United States v. Anderskow*, 88 F.3d 245, 251 (3d Cir.1996). Accordingly, this Court exercises plenary review of a trial court's grant of a post-verdict judgment of acquittal. *See United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002).

## B. Setting Aside of the Jury's Verdict

The People argue that the trial court erred in setting aside the jury's guilty verdict and dismissing the charge against Faulkner for unauthorized use of a firearm during the commission of a crime of violence. We agree.

 The trial court set aside the jury's guilty verdict and entered a judgment of acquittal with respect to the unauthorized use of a firearm during the commission of a crime of violence charge because the jury found Faulkner not guilty of discharging a firearm, the predicate offense of the unauthorized use of a firearm during the commission of a crime of violence charge. The trial court concluded that the the jury's "finding of not guilty as to [the] predicate offense logically excludes the finding of guilt as to the compound offense." (J.A. 128-29.) It is well-settled, however, that an inconsistent verdict is not a sufficient reason for setting a verdict aside. *United States v. Powell*, 469 U.S. 57, 64-66, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984). In *Powell*, the United States Supreme Court held that even

> where truly inconsistent verdicts have been reached, "[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions; but that does not show that they were not convinced of the defendant's guilt." The rule that the defendant may not upset such a verdict embodies a

prudent acknowledgment of a number of factors. First . . . inconsistent verdicts — even verdicts that acquit on a predicate offense while convicting on the compound offense — should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.

*Id.* (citation omitted). Courts should thus "not infer innocence when a jury, whether through mistake, compromise, or lenity, reaches inconsistent verdicts." *United States v. Craig*, 358 Fed. Appx. 446, 451 n.5 (4th Cir. 2009) (internal quotation marks omitted). As observed in *Craig*, the United States Supreme Court also expressly considered and rejected the argument that inconsistent verdicts justify court intervention in situations where the jury acquits a defendant of a predicate felony, but convicts on the compound felony.[4] *Id.* (quoting *Powell*, 469 U.S. at 67).

In *United States v. Dobyns*, three defendants were charged with kidnapping while armed, assault with intent to kidnap while armed, and possession of a firearm during a crime of violence (PFCV). 679 A.2d 487,

---

[4] In concluding that a court may grant a judgment of acquittal on a compound offense when the jury finds a defendant not guilty of the predicate offense, the Superior Court relied on *United States v. Atlantic States Cast Iron Pipe Co.*, Crim. No. 03-852, 2007 U.S. Dist. LEXIS 56562, at *205 (D.N.J. Aug. 2, 2007) (unpublished). In *Atlantic States*, the court stated that "[i]t is well established that where a verdict of conviction for a defendant is inconsistent with a judgment of acquittal for that defendant on another count, judgment of acquittal on the count of conviction is not required." *Id.* The Superior Court interpreted this language to mean that "[i]t is well established that where a verdict of conviction for a defendant is inconsistent with a judgment of acquittal for that defendant on another count, a Court *may* grant a judgment of acquittal as to the conviction, but acquittal is *not required*." (J.A. 129 n.13 (emphasis in original)). *Atlantic States*, however, does not stand for the proposition that a trial court has the discretion to grant a judgment of acquittal to a compound offense when the jury finds a defendant not guilty of the predicate offense. In fact, *Atlantic States* recognized that "[t]he Third Circuit, applying *Dunn* and its progeny, has long held that '[w]here different offenses are charged in separate counts of an indictment, an acquittal on one or more of the counts does not invalidate a verdict of guilty on another even where the same evidence is offered in support of each count.'" *Atlantic States*, 2007 U.S. Dist. LEXIS 56562, at *205 (collecting cases). Moreover, in *Atlantic States*, the trial court upheld the defendants' conspiracy convictions despite the fact that the jury acquitted the defendants of the substantive crimes. *Id.* 2007 U.S. Dist. LEXIS 56562, at *211. The Superior Court's reliance on *Atlantic States* for granting Faulkner a judgment of acquittal for unauthorized use of a firearm during the commission of a crime of violence was therefore misplaced.

488 (D.C. 1996). The jury acquitted all three of kidnapping while armed and assault with the intent to kidnap while armed, but convicted them of PFCV. *Id.* The defendants subsequently moved for post-verdict judgments of acquittal of the PFCV charge. *Id.* Because the defendants were acquitted of the two offenses that could serve as necessary predicates for the PFCV charge, the trial court granted their motions. *Id.* On appeal, the District of Columbia Court of Appeals recognized that the jury's acquittals on the charges of assault with intent to kidnap while armed and kidnapping while armed were logically inconsistent with the convictions of PFCV. *Id.* at 490. Nonetheless, the court, relying on the United States Supreme Court's decisions in *Dunn v. United States*[5] and *Powell,*[6] reversed the trial court's order granting post-verdict judgments of acquittal. *Id.* The court concluded that criminal convictions based on inconsistent verdicts should be upheld as long as there is sufficient evidence to support the convictions. *Id.* We agree with this analysis. Therefore, we reverse the Superior Court's order setting aside the jury's guilty verdict and dismissing the charge against Faulkner for unauthorized use of a firearm during the commission of a crime of violence.

## III. CONCLUSION

An inconsistent verdict is not a sufficient reason for setting a verdict aside, even in situations where the jury acquits a defendant of a predicate felony, but convicts on the compound felony. Therefore, we reverse the Superior Court's order setting aside the jury's guilty verdict and dismissing the charge against Faulkner for unauthorized use of a firearm during the commission of a crime of violence, and the defendant's conviction on that charge is hereby reinstated.

---

[5] 284 U.S. 390, 393, 52 S. Ct. 189, 76 L. Ed. 356 (1932).
[6] 469 U.S. at 67.