## JOHN J. GUMBS, Appellant/Defendant
## v.
## PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff

S. Ct. Criminal No. 2010-0034

Supreme Court of the Virgin Islands

September 20, 2013

KELE C. ONYEJEKWE, ESQ., Territorial Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

TERRYLN M. SMOCK, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.* SWAN, *Associate Justice*, concurring in part and dissenting in part.

## OPINION OF THE COURT

(September 20, 2013)

HODGE, *Chief Justice.* Appellant John J. Gumbs appeals his convictions for violating the Criminally Influenced and Corrupt Organizations Act, 14 V.I.C. § 600 *et seq.* ("CICO") and obtaining money by false pretenses. For the reasons that follow, we affirm.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

Between January 2003 and August 2005, Gumbs operated the John Gumbs Insurance Agency, where he worked as its only licensed insurance

agent. (J.A. Vol. 2 at 41.) In response to complaints that the agency was not turning over premiums to Guardian Insurance, the Lieutenant Governor's Office initiated an examination of the company. (J.A. Vol. 2 at 45-48.) The examination allegedly revealed "a wide pattern of insurance fraud by Mr. Gumbs." (J.A. Vol. 1 at 43.) Specifically, the examiners alleged that Gumbs had taken $176,145.31 from 248 individuals in exchange for providing insurance coverage, but that he had never transmitted the premiums to the insurance companies. (J.A. Vol. 1 at 44.) According to the examiners, this caused these individuals to falsely believe that they had obtained insurance coverage, when in fact they had not, because Gumbs had never transferred the premiums to the insurance companies responsible for providing the insurance. (J.A. Vol. 1 at 43-44.) Based on this information, the People charged Gumbs with violating CICO and obtaining money by false pretenses. (J.A. Vol. 1 at 27-28.)

On March 1, 2010, a three day jury trial commenced. (J.A. Vol. 1 at 19-22.) At trial, the People presented evidence that, between January 2003 and August 2005, Gumbs, as an insurance agent for John Gumbs Insurance Agency, took approximately $88,560.84 in premiums from 175 individuals in exchange for various types of insurance from Guardian Insurance, but never transmitted the premiums to Guardian Insurance, as required. (J.A. Vol. 2 at 185-86.) The People presented specific evidence that during this time period Deep Life Christian Ministries paid Gumbs premiums of $1,480.80, $1,585.46, and $1,286.67 respectively for three car insurance policies on three separate occasions, but that Gumbs never transmitted the premiums to Guardian Insurance and Deep Life Christian Ministries never obtained insurance. (J.A. Vol. 2 at 180-83, 229-36.) Similarly, the People presented evidence that Gumbs had collected at least $579.42 in premiums from Living Word Ministries for car insurance, but that he had failed to transmit these funds to Guardian Insurance. (J.A. Vol. 2 at 183-84, 252-57.) Likewise, the People introduced evidence that Gumbs collected approximately $6,000 from Adastin and Yvonne Waldron to renew a homeowner's insurance policy that he never renewed. (J.A. Vol. 3 at 147-52.)

The People also presented evidence that between November and December 2005 — after he sold the John Gumbs Insurance Agency in August 2005 — Gumbs contacted Carol Victorine, as her insurance agent, and told her that her homeowner's insurance needed to be renewed before January 11, 2006. (J.A. Vol. 2 at 65-68.) After meeting her in person on

December 9, 2005, Victorine tendered $3,500 in cash towards her $4,530 premium. (J.A. Vol. 2 at 68-69.) Then on January 30, 2006, Victorine paid Gumbs an additional $1,050 to cover her remaining balance plus a late fee. (J.A. Vol. 2 at 69-70.) At trial, Victorine testified that she later learned from her bank that her homeowner's insurance was never renewed, which required her to obtain homeowner's insurance from another insurance company. (J.A. Vol. 2 at 70-81.)

The jury returned a verdict on March 3, 2010, finding Gumbs guilty on both counts of the information. Gumbs filed his timely notice of appeal on May 25, 2010. (J.A. Vol. 1 at 18.) In a June 15, 2010 Judgment and Commitment, the Superior Court sentenced Gumbs to ten years incarceration, with three years suspended, for each count, with the sentences to run concurrently. (J.A. Vol. 1 at 19-24.) Additionally, the Superior Court assessed a $10,000 fine and ordered him to pay restitution in the amount of $99,129.94 for violating CICO. (J.A. Vol. 1 at 24.)

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Title 4, section 32(a) of the Virgin Islands Code vests this Court with "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." The written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment. *See, e.g.*, *Jackson-Flavius v. People*, 57 V.I. 716, 721 (V.I. 2012) (citing *Potter v. People*, 56 V.I. 779, 787 (V.I. 2012)). Therefore, we possess jurisdiction to hear this appeal.

"Ordinarily, the standard of review for this Court's examination of the Superior Court's application of law is plenary, while findings of fact are reviewed for clear error." *Rawlins v. People*, 58 V.I. 261, 268 (V.I. 2013) (quoting *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)). However, when a criminal defendant fails to object to a Superior Court decision or order — as is the case with every issue Gumbs has raised on appeal — this Court only reviews for plain error, provided that the challenge has been forfeited rather than waived. *See* V.I.S.CT.R. 4(h); *see also Francis v. People*, 52 V.I. 381, 390 (V.I. 2009). For this Court to reverse the Superior Court under the plain error standard of review, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s]

substantial rights.' " *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997)). However, even "[i]f all three conditions are met," this Court may reverse the Superior Court "only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 390-91.

## B. Sufficiency of the Evidence

Gumbs argues that this Court should vacate his conviction for violating CICO because the People purportedly failed to prove a pattern of criminal activity. Specifically, he contends that in order to secure a conviction under CICO, the People were required to prove that he committed at least two criminal acts, one of which was a felony.

■ Pursuant to CICO, "[i]t is unlawful for any person employed by, or associated with, any enterprise . . . to conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of criminal activity." 14 V.I.C. § 605(a). CICO defines "criminal activity" as

> engaging in, attempting to engage in, conspiring to engage in, or so-liciting, coercing, or intimidating another person to engage in the crimes, offenses, violations or the prohibited conduct as variously de-scribed in the laws governing this jurisdiction including any Federal criminal law, the violation of which is a felony and, in addition, those crimes, offenses, violations or prohibited conduct as found in the Virgin Islands Code as follows:
>
> . . . .
>
> (16) Title 14, chapter 41, Virgin Islands Code, relating to fraud and false statements;
>
> . . . .
>
> (19) Title 14, chapter 55, Virgin Islands Code, relating to larceny and embezzlement. . . .

14 V.I.C. § 604(e). And CICO further defines a "pattern of criminal activity" as "two or more occasions of conduct (1) that (A) constitute criminal ac-tivity; (B) are related to the affairs of the enterprise; and (C) are not isolated; and (2) where . . . . (C) for the purposes of section 606 [Criminal penalties] of this chapter . . . at least one of the occasions of conduct constituted a felony under the Virgin Islands Code . . . ." 14 V.I.C. § 604(j). Thus, Gumbs is correct that, to sustain a conviction under CICO, the People must prove, beyond a reasonable doubt, that a defendant committed at least one felony.

 We find that the People easily met their burden in this case. In the information, the People identified embezzlement or obtaining money by false pretenses as the offenses constituting Gumbs's pattern of criminal activity.[1] (J.A. Vol. 1 at 27.) While Gumbs correctly notes that these offenses are punishable as either misdemeanors or felonies depending on the value of the money that was embezzled or falsely obtained, he ignores that this Court, when reviewing the sufficiency of the evidence, must view the evidence in the light most favorable to the People, and provide the People with the benefit of all reasonable inferences. *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009); *see also Mulley v. People*, 51 V.I. 404, 409 (V.I. 2009) (noting that the evidence offered in support of a conviction "need not be inconsistent with every conclusion save that of guilty, so long as it establishes a case from which a jury could find the defendant guilty beyond a reasonable doubt" (quoting *United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1996))). Importantly, when the elements of a criminal offense require the People to prove that the defendant committed an underlying felony, even an acquittal on the predicate felony would not justify setting aside a conviction for the compound felony if the People introduced sufficient evidence for the jury to convict the defendant of the predicate felony. *See, e.g., United States v. Powell*, 469 U.S. 57, 69, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984); *People v. Thompson*, 57 V.I. 342, 350-51 (V.I. 2012); *People v. Faulkner*, 57 V.I. 327, 333-34 (V.I. 2012).

 Under Virgin Islands law, both embezzlement and obtaining money by false pretenses constitute felonies if the money embezzled or unlawfully obtained is $100 or more, and misdemeanors if less than $100 in value. 14 V.I.C. §§ 834(1)-(2); 1094(a)(1)-(2). At trial, the People

---

[1] In his appellate brief, Gumbs argues that the pertinent portion of the information, which stated that he "committed acts of embezzlement or obtaining money by false pretenses," should have been pleaded in the conjunctive and not the disjunctive. Since Superior Court Rule 128(a), and not Federal Rule of Criminal Procedure 12(b)(3)(B), governs challenges to the sufficiency of the information, and because Gumbs never challenged this language at any point before the Superior Court — let alone prior to trial — we question whether it is appropriate for us to review this issue even for plain error. *See DeGroot v. People*, S. Ct. Crim. No. 2008-0107, 2013 V.I. Supreme LEXIS 16 at *5-6 n.1 (V.I. Apr. 29, 2013) (unpublished) (citing *Tindell v. People*, 56 V.I. 138, 148 (V.I. 2012). Nevertheless, we do not hesitate in concluding that the information in this case was more than sufficient. *See United States v. Saybolt*, 577 F.3d 195, 204-05 (3d Cir. 2009); FED. R. CRIM. P. 7(c)(1) (an information must be "a plain, concise, definite written statement of the essential facts constituting the offense charged.").

presented overwhelming evidence that, on multiple occasions, Gumbs collected monies greatly in excess of $100 and never transmitted the funds to the pertinent insurance companies, including, but not limited to, (1) collecting premiums of $1,480.80, $1,585.46, and $1,286.67 for three car insurance policies, on three separate occasions, from Deep Life Christian Ministries; (2) collecting $579.42 from Living Word Ministries for car insurance; and (3) obtaining approximately $6,000 from the Waldrons to renew their homeowner's insurance policy. (J.A. Vol. 2 at 180-84; Vol. 3 at 147.) Consequently, the People introduced more than sufficient evidence to establish a pattern of criminal activity under CICO.[2]

## C. Verdict Forms

 Similarly, Gumbs requests that this Court set aside his conviction for obtaining money under false pretenses — which was predicated on his taking $4,550 from Victorine[3] — on the grounds that the Superior Court failed to comply with section 3636 of title 5 of the Virgin Islands Code,

---

[2] In his brief, Gumbs also invokes *United States v. Carrillo*, 229 F.3d 177 (2d Cir. 2000), a case interpreting the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), upon which our local CICO statute was modeled, *see Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 562, 45 V.I. 495 (D.V.I. 2004), for the proposition that the Superior Court, when giving its final jury instructions, should have fully set forth all the elements of embezzlement and obtaining money by false pretenses. However, the *Carrillo* decision expressly recognizes that a trial court may "charge a predicate RICO offense by a generic description rather than giving the jury the elements in full," even though fully setting forth the elements "is the best practice," 229 F.3d at 185, and in the present case the People's proof established the elements of both predicate offenses beyond a reasonable doubt, hence there was no prejudice to this defendant and no abuse of discretion in the instructions as given in this case.

[3] Gumbs also argues in his appellate brief that the jurors were "confused" by the fact that count one of the information charged CICO with obtaining money by false pretenses as a predicate felony, while count two also charged him with obtaining money by false pretenses. (Appellant's Br. 24.) According to Gumbs, this resulted in "a lack of juror unanimity" because the jurors "obviously confused count one and count two as the same offense." (*Id.*) However, the record clearly reflects that the obtaining money by false pretenses alleged as the predicate CICO felony in count one referred solely to Gumbs's activities while serving as the owner of the John Gumbs Insurance Agency between January 2003 and August 2005 (J.A. Vol. 1 at 27), while count two charged Gumbs with obtaining money by false pretenses from Victorine in November or December 2005, several months after Gumbs had sold the John Gumbs Insurance Agency. (J.A. Vol. 1 at 28; J.A. Vol. 2 at 65-69.) Thus, the jury convicted Gumbs for violating CICO based on his actions between January 2003 and August 2005, and convicted him for obtaining money by false pretenses based on his actions between November 2005 and December 2005.

which provides that "[w]hen an information charges an offense against property by larceny, embezzlement, or obtaining by false pretenses, the jury, on conviction, shall ascertain and declare in the verdict the value of the property stolen, embezzled, or falsely obtained." However, since Gumbs failed to object to this omission at trial, we review solely for plain error. As this Court has recently explained, a failure to comply with section 3636 does not affect a defendant's substantial rights if the evidence at trial establishes the value of the stolen property exceeds the amount set forth in the pertinent statute and the judge properly instructs the jury on the elements of the charged offenses. *Connor v. People*, S. Ct. Crim. No. 2011-0021, 2013 V.I. Supreme LEXIS 31 at *21-22 (V.I. July 2, 2013). As in *Connor*, the overwhelming, uncontradicted evidence in the record — none of which Gumbs even attempted to dispute — established that the amount of funds Gumbs falsely obtained greatly exceeded $100, and the Superior Court correctly instructed the jury that, to convict Gumbs of obtaining money by false pretenses, it must find beyond a reasonable doubt that the value of the funds exceeded $100. (J.A. Vol. 4 at 249.) Accordingly, the jury's failure to declare the value of the money falsely obtained did not affect Gumbs's substantial rights, and therefore does not warrant reversal.[4]

---

[4] Gumbs also argues, in a portion of his appellate brief which is only two paragraphs long without citation to meaningful legal authority other than for the standard of review, that this Court should vacate both of his convictions because the Superior Court should have dismissed one of the jurors — Juror No. 12 — for bias because (1) she appeared to be aware of some of the documents relating to the litigation, and (2) two prosecution witnesses were clients of the law firm that employed her. However, Gumbs has provided this Court with absolutely no citation to the record to support his claim that Juror No. 12 possessed pre-trial knowledge of the evidence, and this Court, in its own independent review of the record, can find none. Moreover, the record reflects that Juror No. 12 disclosed during *voir dire* her knowledge of the two witnesses, and, when asked by the trial judge if she could nevertheless "listen to the evidence and render a decision solely on the evidence," Juror No. 12 responded "Yes." (J.A. Vol. 1 at 101.) And when further asked if she "[w]ould . . . give more weight to their testimony" or "believe them more because they were clients at your firm," she responded "No." (*Id.*) Since this Court accords "great deference" to the trial judge in such matters, *see Vergile v. People*, 54 V.I. 455, 461 (V.I. 2010), we decline to consider this issue in light of Gumbs's complete failure to provide any reasoned argument or authority in his brief. *See* V.I.S.CT.R. 22(m) ("Issues that . . . are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority[] are deemed waived for purposes of appeal . . . .").

## III. CONCLUSION

The People introduced sufficient evidence to sustain Gumbs's conviction for violating CICO. Moreover, while the Superior Court committed error by failing to comply with section 3636 of title 5, that error did not affect Gumbs's substantial rights. Thus, we affirm the June 15, 2010 Judgment and Commitment.

## DISSENTING IN PART CONCURRING IN PART OPINION

SWAN, *Associate Justice*, concurring in part and dissenting in part. Appellant, John J. Gumbs, seeks reversal of his convictions for violation of the Criminally Influenced and Corrupt Organizations Act ("CICO") under title 14, section 605(a) of the Virgin Islands Code and obtaining money by false pretenses under title 14, section 834(2) of the Virgin Islands Code. I would vacate his conviction on Count II, obtaining money under false pretenses, and affirm his conviction on Count I, specifying a violation of CICO.

## I. FACTS AND PROCEDURAL HISTORY

The John J. Gumbs Insurance Agency, Inc., owned and operated by John J. Gumbs ("Gumbs"), was a licensed insurance agency offering insurance policies to the general public on behalf of insurers licensed in the Virgin Islands. Gumbs had contractual relationships with Guardian Insurance Agency ("Guardian"), NEWMIL, and Red Hook Insurance Agency. Gumbs sold insurance for cars, homes, other property and life insurance. Gumbs served as an intermediary for the insurance carriers, the actual parties accepting the liability in the event a claim was filed. Insurance coverage by an off island carrier would not commence until Gumbs transmitted the customer's information and customers' payments from which Gumbs received his commissions. To consummate a sale of insurance, Gumbs was required to receive payment from the customer and issue a receipt and insurance card or binder to the customer. Gumbs was then required to transfer the payment he collected from the customers to the various insurance carriers.

An investigation of Gumbs' business practices commenced after the Chief of Securities/Registration of the Division of Banking and Insurance at the Lieutenant Governor's Office received correspondence from Guardian informing the Lieutenant Governor's Office that Guardian had

terminated its contractual relationship with Gumbs because he was habitually tardy in transmitting his reports and premiums. (Trial Trans. Vol. II, P. 40, 275.) The Lieutenant Governor's Office also received complaints from customers who paid Gumbs for insurance coverage but discovered they were uninsured when they filed a claim. (Trial Trans. Vol. II, P. 47-48.) After an investigation by the Lieutenant Governor's Office, the People filed a two count Information against Gumbs charging him with violating the CICO under title 14, section 605(a) and obtaining money by false pretenses under Title 14 section 834(2) of the Virgin Islands Code. (Trial Trans. Vol. I, P. 27.) A jury trial commenced on March 1, 2010.

On or about February 16, 2006, financial service examiners were assigned to review the records of John J. Gumbs Insurance Agency.[1] The lead examiner, Joan Rey ("Rey"), testified that she and her team of examiners reviewed approximately 300 files. (Trial Trans. Vol. II. P. 157.) She stated that many of the files were incomplete because they lacked one of the following: a binder, an insurance card, a payment receipt, a declaration sheet, or a transmittal form.

Rey testified that she first documented the instances where the declaration forms, which are the official contracts between the policy holder and insurance company, were missing. This meant that insurance coverage was never extended to the customer. (Trial Trans. Vol. II, P. 165-66.) Rey stated that she inquired of Gumbs as to the location of the missing forms. After Gumbs failed to submit the forms to Rey, she requested the transmittal sheets, which accompany the money transmitted to the insurance carrier. (Trial Trans. Vol. II, P. 166, 171.) Rey testified that Gumbs failed to produce the transmittal forms and directed her to Hansina Edwards, the office manager.[2] (Trial Trans. Vol. II, P. 171-72.) Rey stated that the discussion between Gumbs and Edwards erupted into an argument regarding who was responsible for the missing transmittal sheets.

---

[1] The investigation was conducted at First Insurance, which was not the original location of John J. Gumbs Insurance Agency.

[2] Gumbs testified that Edwards was his "second in command, meaning that I give her full authority to procure insurance. Anybody that came into the office she had the authority to write the application, make the receipt, and process the paperwork, and prepare the transmittals for payment." (Trial Trans. Vol. III, P. 345.)

Rey further testified that approximately 246 files were missing declaration sheets, which were predominately for Guardian policies. Rey stated that she used the receipt book during her examination because they found receipts but no file for the clients listed on the receipt. (Trial Trans. Vol. II, P. 175.) From her examination, Rey created a summary of the customers in whose accounts there was irrefutable evidence that money was collected but no documentation that the money had been remitted to the insurance carriers. (Trial Trans. Vol. II, P. 179.) The summary encompassed the period from January 1, 2003 to December 31, 2005. (Trial Trans. Vol. II, P. 180.)

In her testimony, Rey highlighted two customers, Deeper Life Christian Ministries ("Deeper Life") and Living Word Family Ministries ("Living Word"), both of which paid funds to Gumbs for the purchase of insurance but subsequently were discovered not to be insured by Guardian. Deeper Life made payments to Gumbs on December 17, 2003, July 19, 2004 and December 21, 2004 totaling $4,352.93, and the examiner discovered that in each instance there were no declaration or transmittal sheets. (Trial Trans. Vol. II, P. 181, 183.) Likewise, Living Word paid Gumbs $579.42 on April 13, 2005 for an insurance policy but there was no declaration or transmittal sheet. (Trial Trans. Vol. II, P. 184.) The examiner totaled the amount of money Gumbs failed to transmit to Guardian as $88,560.84. (Trial Trans. Vol. II, P. 185.)

Carol Victorine ("Victorine") also testified at the trial about her lack of home insurance coverage, although she had given Gumbs $4,548.12 in two separate transactions in which she received signed receipts. (Trial Trans. Vol. II, P. 69, 75.) After paying Gumbs for home insurance, a representative of Scotia Bank informed Victorine that the bank had not received a binder. In total, the bank sent four letters to Victorine regarding this same issue. (Trial Trans. Vol. II, P. 70.) Victorine then contacted Gumbs to inquire as to the reason she had no insurance coverage. (Trial Trans. Vol. II, P.71.) Gumbs informed Victorine that he had merged with St. Thomas Insurance Agency and "everything [wa]s upside down" and that he would get things in order for her. (Trial Trans. Vol. II, P. 71.) She further testified that she continued to receive letters from the bank and attempted to get an answer from Gumbs but was unsuccessful. Victorine's stated that eventually Gumbs ceased answering or returning her phone

calls. (Trial Trans. Vol. II, P. 106.) Victorine then went to First Insurance[3] and was informed that there were some problems with Gumbs' files. (Trial Trans. Vol. II, P. 109.) First Insurance issued an insurance binder to the bank on January 17, 2006 that was valid for three months. (Trial Trans. Vol. II, P. 143). Victorine eventually procured insurance coverage from another insurer. An insurance certificate was issued to the bank on March 20, 2006. (Trial Trans. Vol. II, P. 80-81.)

Gumbs held a fiduciary account as required by the term of the contracts with the insurance companies and in accordance with Virgin Islands law. (Trial Trans. Vol. II, P. 270.) Gumbs was responsible for depositing into this account the monies collected from customers which were subsequently transmitted to the insurance company. (*Id.*) Maureen Hedrington, of Guardian, testified that Guardian terminated its contract with Gumbs because he violated the contract by not having transmittals, applications, and payments forwarded to Guardian. (Trial Trans. Vol. II, P. 273.) She further testified that Guardian honored the claims of 175 customers who had made payments totaling approximately $88,000 to Gumbs even though the funds were not forwarded to Guardian. (Trial Trans. Vol. II, P. 276-77.)

At the close of the People's case, Gumbs made a Rule 29 motion for a judgment of acquittal which the court denied. (Trial Trans. Vol. III, P. 203.) In his defense, Gumbs argued that he did not steal any money, and he is only guilty of being a poor office manager and that the persons working in his office prepared most of the documents in his absence. Gumbs presented multiple witnesses who testified about their business relationships with Gumbs and of their knowledge of his habits as a business owner. Gumbs also testified in his defense.

Gumbs testified to his experience as an insurance broker, including about his prior jobs and certifications. He avers that around 2003, he had a problem with an employee who he believed to have been embezzling funds. (Trial Trans. Vol. III, P. 326.) Gumbs also testified that he would transmit all the required documents and the insurance carriers would fail to provide coverage for his customers, and neither he nor the customers would know until it was time to renew the policy. (Trial Trans. Vol. III,

---

[3] Gumbs sold his agency to St. Croix Insurance Agency, which, a short time after, was sold to First Insurance. (Trial Trans. Vol. II P. 47.)

P. 349-50.) Further, Gumbs specifically testified that he deposited Victorine's payment of $1,048.12 into First Bank the day after he received it. (Trial Trans. Vol. III, P. 384.) Regarding the $3,500 from Victorine, Gumbs adamantly denied that he ever received $3,500 from her. (Trial Trans. Vol. I, P. 129-32.) Gumbs further suggested that the examiner's investigation was flawed because of the number of errors that he discovered on the list of customers whose money he had allegedly stolen. (Trial Trans. Vol. IV, P. 112-14.)

The jury received the final instructions and proceeded to deliberate. The jury returned a verdict finding Gumbs guilty of both Counts of the Information. The Judgment and Commitment was filed on June 15, 2010. Gumbs timely filed his notice of appeal on June 21, 2010.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A final order is a judgment from a court which ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment. *Williams v. People*, 55 V.I. 721, 727 (V.I. 2011); *In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008) (citing *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381 (3d Cir. 1996)). The Superior Court entered a final judgment in this matter on June 15, 2010; therefore, the Supreme Court has jurisdiction over this matter.

## III. ISSUES AND STANDARD OF REVIEW

Gumbs raises several issues on appeal which have been consolidated into four issues. Firstly, Gumbs argues that his conviction must be reversed on both counts of the information because the jury did not declare the amount of money embezzled or obtained by false pretenses in its verdict in accordance with 5 V.I.C. § 3636. Secondly, Gumbs argues that the People did not meet its burden on Count I, violation of CICO because they did not prove two or more criminal activities. Thirdly, Gumbs argues that the judge did not include in the final jury instructions for Count I, the elements of the underlying crime of obtaining money by false pretenses or embezzlement. Fourthly, Gumbs argues that the presence of a juror who has ties to one of the prosecution's witnesses deprived him of his right to a jury trial.

796

The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *Blyden v. People*, 53 V.I. 637, 646 (V.I. 2010); *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 300 (3d Cir. 2008). I review Gumbs' claim, that the final jury instructions were inadequate for abuse of discretion. *Phillips v. People*, 51 V.I. 258, 269 (V.I. 2009). Gumbs failed to object at trial to any other issues that he presents to this Court. If a party fails to adequately object at trial, we will only review the issues for plain error. *Francis v. People*, 52 V.I. 381, 390 (V.I. 2009). Thus, we will reverse a trial court's rulings only where the error affects substantial rights and "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *See Farrell v. People*, 54 V.I. 600, 609 (V.I. 2011) (quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997)).

## IV. DISCUSSION

### A. The trial court erred by not requiring that the jury declare the amount of money embezzled or taken by false pretenses in accordance with 5 V.I.C. § 3636.

Gumbs argues that his conviction on both counts should be reversed because the verdict failed to specify the amount of money he embezzled or took by false pretense in accordance with 5 V.I.C. § 3636. The People have responded arguing that the statute does not apply in this case because money is not property but rather a medium of exchange whose value is predetermined by the amount exchanged. (Appellee Br. 14.) 5 V.I.C. § 3636 states:

> When an information charges an offense against property by larceny, embezzlement, or obtaining by false pretenses, the jury, on conviction, shall ascertain and declare in the verdict the value of the property stolen, embezzled, or falsely obtained.

Gumbs failed to raise this objection at trial; therefore, we review this issue under the plain error standard. The plain error standard states that an appellate court may correct an error not raised at trial if it finds: 1) an error, 2) that is plain, 3) that affects substantial rights, and 4) if, in its discretion it finds that "the error seriously affects the fairness, integrity, or public reputation of [the] judicial proceedings." *Jackson-Flavius v. People*, 57 V.I. 716,

797

721 (V.I. 2012) (quoting *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005)).

Gumbs' challenge to the statutory interpretation of title 5, section 3636 requires that we first examine the language of the statute for its plain meaning. *Gov't of the V.I. v. Knight*, 989 F.2d 619, 633, 28 V.I. 249 (citing *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 557-58, 110 S. Ct. 2126, 109 L. Ed. 2d 588 (1990)). Further if the "statutory language is unambiguous, the plain meaning of the words ordinarily is regarded as conclusive." *Id.* (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S. Ct. 2051, 64 L. Ed. 2d 766 (1980)). Further, "if the statutory language is clear, a court must give it effect unless this 'will produce a result demonstrably at odds with the intention of [the] drafters.' " *Id.* (quoting *Griffin v. Oceanic Contractors, Inc,.* 458 U.S. 564, 102 S. Ct. 3245, 73 L. Ed. 2d 973 (1982)). In the case where the "statute codifying a criminal offense is ambiguous, the ambiguity is resolved in favor of the criminal defendant." *Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009) (citing *Knight*, 989 F.2d at 633).

In this case, the statute is unambiguous. 5 V.I.C. § 3636 mandates that the amount embezzled or obtained under false pretenses shall be included in the verdict and the trial court's failure to do so was plain error. As noted above, 5 V.I.C. § 3636 reads: "When an information charges an offense against property by larceny, embezzlement, or obtaining by false pretenses, the jury, on conviction, shall ascertain and declare in the verdict the value of the property stolen, embezzled, or falsely obtained." (Emphasis added). Further, this Court has held that, "[t]he use of the mandatory word 'shall' normally serves to create an obligation impervious to judicial discretion." *Shoy v. People*, 55 V.I. 919, 927 (V.I. 2011) (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998)). This Court continued, "In contrast, the use of the permissive auxiliary verb 'may' as opposed to 'shall' strongly suggests a discretionary rather than a mandatory action." *Id.* (citing *Rastelli v. Warden, Metro. Corr. Ctr.*, 782 F.2d 17, 23 (2d Cir. 1986)). It is clear from the statute at issue here that the inclusion of the value amount of money embezzled or taken under false pretenses was a mandatory requirement.

Because no objection was made at trial, I review this failure to require specification of the amount of money embezzled or taken under false pretense for plain error. As I explained above, the error is plain and results

in reversal if the defendant's substantial rights were affected and the error affects the fairness, integrity, or public reputation of the judicial proceedings. *Jackson-Flavius*, 57 V.I. at 721. I find that the jury's failure to explicitly state the amount of money embezzled or taken under false pretenses substantially affected Gumbs' rights and affected the fairness of the proceedings. Gumbs was sentenced for a felony without the jury determining whether they believed that a felony or a misdemeanor was committed. Under section 834, obtaining money by false pretense, a defendant convicted of taking less than $100, could be fined not more than $200 or imprisoned not more than one year, or both; but if the defendant took more than $100, he could be imprisoned for not more than 10 years. The difference between one year and 10 is a substantial impact upon Gumbs' rights. This error constitutes reversible error; therefore, I would reverse Gumbs' conviction on Count II.

### B. The People met its burden on Count I for violation of CICO because the government proved a "pattern of criminal activity" as required by the statute.

Gumbs argues that the People did not meet its burden on Count I because two or more criminal activities were not proven as required by the statute. This argument has no merit. Title 14, section 605(a) of the Virgin Islands Code provides that "[it] is unlawful for any person employed by, or associated with, any enterprise, as that term is defined herein, to conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of criminal activity." In turn, section 604(j) defines a "pattern of criminal activity" as "two or more occasions of conduct . . . that . . . constitute criminal activity; . . . are related to the affairs of the enterprise; and . . . are not isolated; and . . . where . . . at least one of the occasions of conduct occurred within five years of the filing of the action under [CICO] . . . and . . . at least one of the occasions of conduct constituted a felony under the Virgin Islands Code. . . ."

Gumbs' assertion that there was insufficient evidence to prove that there were two or more crimes is simply not supported by the trial record. This Court applies a highly deferential standard of review to the jury's verdict. *United States v. Kellogg*, 510 F.3d 188, 202 (3d Cir. 2007). *See also Duggins v. People*, 56 V.I. 295, 300 (V.I. 2012); *Smith v. People*, 51 V.I. 396, 397-98 (V.I. 2009). Additionally, I "examine the totality of the evidence, both direct and circumstantial,' and 'interpret the evidence in

the light most favorable to the government as the verdict winner.' " *United States v. Pavulak*, 700 F.3d 651, 668 (3d Cir. 2012) (quoting *United States v. Miller*, 527 F.3d 54, 60, 62 (3d Cir. 2008)) (citations omitted). The jury's verdict will be upheld if there is substantial evidence from which a rational trier of fact could find, beyond a reasonable doubt, the essential elements of the crime. *Miller*, 527 F.3d at 60. In making this determination, I do not judge the credibility of a witness nor weigh the evidence. *Smith v. People*, 51 V.I. 396, 401 (V.I. 2009) (citing *United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1994)).

The People presented multiple pieces of evidence and provided the jury with ample testimony to support their rational finding that Gumbs engaged in a "pattern of criminal activity" satisfying the requirements of 14 V.I.C. § 604(j). At trial, the People presented the testimony of Rey, the financial examiner from the Lieutenant Governor's Office, regarding the results of her investigation into the business operations of Gumbs' agency. She testified that there were 246 files in Gumbs' agency that were incomplete, in that they indicated that Gumbs had collected money from clients desiring to purchase insurance policies between January 1, 2003 and December 31, 2005, but that he had wrongfully retained and failed to transmit the monies he collected to the insurance carriers, resulting in no insurance policies being issued to these clients. Rey further testified that the total amount of money Gumbs failed to transmit to Guardian is $88,560.84, which shows a "pattern" because of the numerous client accounts where the malfeasance was undertaken, and the total sum is immeasurably more than any one client's premium. Significantly, the People also highlighted detailed evidence concerning three of Gumbs' clients — Deeper Life, Living Word, and Victorine — who after giving Gumbs their payments, subsequently discovered that they had no insurance coverage. All of these payments exceeded $100 in value, and all were wrongfully retained by Gumbs. Accordingly, each of these payments could serve as the basis for a conviction of obtaining money by false pretenses under 14 V.I.C. § 834, and each could serve as the basis for imposing a sentence on Gumbs of "imprison[ment for] not more than 10 years." *See* 14 V.I.C. § 834. In the Virgin Islands, "a felony is a crime or offense which is punishable by imprisonment for more than one year." 14 V.I.C. § 2(b)(1). Thus, actions making a person, such as Gumbs, eligible for punishment under 14 V.I.C. § 834(2) constitute felonies under Virgin Islands law. All of these payments were collected and wrongfully retained

by Gumbs within the key CICO statutory periods after November 9, 1990, and the last of these payments were made within five years of the filing of the action against Gumbs as the statute requires. Gumbs collected these, and all other payments, in his capacity as an insurance agent and as the owner and operator of the John J. Gumbs Insurance Agency, Inc., through the auspices of that business enterprise. Based on the foregoing, the evidence was more than sufficient to allow any jury to find that Gumbs engaged in a "pattern of criminal activity" as defined under 14 V.I.C. § 604(j), in a manner violating the prohibition against "conduct[ing] or participat[ing] in, directly or indirectly, the affairs of [an] enterprise" — here, the John J. Gumbs Insurance Agency, Inc. — through "a pattern of criminal activity" as proscribed by 14 V.I.C. § 605(a). Gumbs' argument to the contrary presents no cogent or plausible reason for this Court to disturb the jury's verdict. The People have met their burden.

## C. The trial court's instruction on Count I was sufficient.

Gumbs argues that the trial court erred because its Count I jury instruction failed to enumerate the elements of the crime charged. Gumbs further argues that the trial court's failure to give the proper instruction resulted in the jury's inability to find a pattern of criminal activity and do so in a unanimous fashion. Gumbs did not object to the jury instruction at trial; therefore, I review this argument under the plain error standard. As noted earlier, for there to be plain error warranting reversal of the jury's verdict, there must be 1) an error, 2) that is plain, 3) that affects substantial rights, if 4) in the court's discretion it finds that "the error seriously ·affects the fairness, integrity, or public reputation of [the] judicial proceedings." *Jackson-Flavius*, 57 V.I. at 721 (quoting *Dobson*, 419 F.3d at 236). "A jury instruction will generally not be invalidated unless it is shown that the instruction substantially and adversely impacted the constitutional rights of the defendant and impacted the outcome of the trial." *Prince v. People*, 57 V.I. 399, 405 (V.I. 2012). "So long as the court's charge, considered as a whole, fairly and accurately state[s] the applicable law, a denial of a requested jury instruction will not be grounds for reversal." *Workman v. United States*, 15 A.3d 264 (D.C. 2011) (quoting to *Blocker v. United States*, 940 A.2d 1042, 1049 (D.C. 2008)). *See also Williams v. People*, 55 V.I. 721, 731 (V.I. 2011) (observing that "[w]hen providing the instructions to the jury, the trial court . . . was only required to correctly state the law . . . [and] is not

801

obligate to use the language the defendant proffers."); *Nanton v. People*, 52 V.I. 466, 479 (V.I. 2009) (explaining that "the validity of a challenge to [a] jury instruction [] must be considered against the complete jury instructions and the whole trial record").

The final jury instructions for Count I were as follows:

> [I]n order to prove or sustain the burden of proof for the crime under the Criminally Influenced and Corrupt Organizations Act as set forth in Count One of the Fourth Amended Information against the Defendant, John Gumbs, the People must prove beyond a reasonable doubt. One, that on or about January 1, 2003 through December 31, 2005; two, in St. Thomas, United States Virgin Islands; three, the defendant, John J. Gumbs; four, was employed by or associated with an enterprise; five, and the Defendant John J. Gumbs, participated either directly or indirectly; six, in the conduct of the affairs of the enterprise; and seven, through a pattern of criminal activity; eight, in that the Defendant on more than two occasions obtained money from persons seeking insurance coverage as owner and president of John J. Gumbs Insurance Agency, and did not transfer such funds as required to the various insurance coverage.

(Trial Trans. Vol. IV, P. 246-247.)

The CICO law, codified at title 14 section 605(a), states that "[i]t is *unlawful* for any person employed by, or associated with, any enterprise, as that term is defined herein, to conduct or participate in directly or indirectly, the affairs of the enterprise through a pattern of criminal activity." (emphasis added). Contrary to Gumbs' contention, the jury *instructions did include the specifics of the CICO statute.* Further, Gumbs has not shown how this alleged lack of specificity adversely impacted his rights or the outcome of the trial. Gumbs did not propose a more specific jury instruction nor did he object to the instructions at trial. Accordingly, Gumbs' argument is meritless.

### D. The presence of a juror who had ties to one of the prosecution's witnesses did not deprive Gumbs of his right to a fair jury trial.

Gumbs argues that the presence of a juror who had ties to one of the prosecution's witnesses deprived him of his right to a fair trial because he did not get the benefit of an unbiased jury. Gumbs explained that Juror

Number 12 was biased because as a secretary in the law firm representing one of the prosecution's witnesses, she was aware of some of the documents relating to the litigation. (Appellant's Br. 29-30.)

The Sixth Amendment secures a defendant's right to a trial by an impartial jury. U.S. Const. amend. VI. The means by which we insure that there is juror impartiality is by permitting thorough *voir dire*. Jurisprudence has developed two types of juror potential bias: actual bias and implied bias. Actual bias is "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *United States v. Mitchell*, 690 F.3d 137, 142, 57 V.I. 856 (3d Cir. 2012) (quoting *United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997)). Implied bias is " 'bias conclusively presumed as. [a] matter of law' or put another way, 'bias attributable in law to the prospective juror regardless of actual partiality.' " *Id.* (quoting *United States v. Wood*, 299 U.S. 123, 133, 57 S. Ct. 177, 81 L. Ed. 78 (1936)).

Here, Gumbs is arguing that there would have been implied bias if Juror Number 12 were allowed to remain on the panel. None of this jurisprudence is applicable to this case because the trial court dismissed Juror Number 12 before deliberations. Gumbs failed to mention that during the *voir dire*, then Juror Number 68 in the venire who later became Juror Number 12, informed the trial court that she knew two of the witnesses because they were clients of the firm where she was employed. (J.A. Vol. I, P. 101.) Juror Number 12 stated that she would be able to listen to the evidence and not give any additional weight to the testimony of the witnesses simply because she knew them. (*Id.*)

Further, during Gumbs' testimony, Juror Number 12 realized that she was familiar with some of the documents being entered as evidence in the case. Juror Number 12 informed the judge of her familiarity with the documents. The judge immediately conferred with both attorneys. Defense counsel initially agreed that Juror Number 12 should remain as a member of the panel because of the limited number of alternate jurors and the potentially perceived negative inference that the other jurors could conclude. Subsequently, Gumbs recanted and requested that Juror Number 12 be removed from the panel. The trial court dismissed Juror Number 12 from the panel before the trial ended and she never participated in the deliberations. In this circumstance, there could be no bias found because the complained-of Juror played no part in the deliberations and thus had no influence or effect upon the jury's verdicts.

Gumbs has advanced no further argument as to how the mere presence, during the trial, of this juror who was dismissed before deliberations prejudiced him whereby he was denied a right to a fair trial.

## V. CONCLUSION

I conclude that the failure of the trial court to include the amount of the money embezzled or obtained under false pretenses in the jury verdict was in error as a violation of title 5, section 3636. This error merits a reversal of Gumbs' conviction on Count II. I find that there was no error regarding Count I; therefore, the verdict on Count I, for violation of the Criminally Influence and Corrupt Organization Act is affirmed.